ZANCO, INC., APPELLANT, *v.*
MICHIGAN MUTUAL INSURANCE COMPANY, APPELLEE.

[Cite as Zanco, Inc. *v.* Michigan Mut. Ins. Co. (1984), 11 Ohio St. 3d 114.]

(No. 83-1278—Decided June 13, 1984.)

*Davis & Young Co., L.P.A., Mr. Martin J. Murphy* and *Mr. Paul D. Eklund,* for appellant.

*Mansour, Gavin, Gerlack & Manos Co., L.P.A., Mr. Julius R. Gerlack* and *Mr. Jeffrey L. Tasse,* for appellee.

*Per Curiam.* In its first proposition of law, Zanco argues that an insurer owes a duty to defend its insured if the pleading against the insured contains allegations which are vague, ambiguous, nebulous or incomplete such that a potential for coverage exists. This rule has recently been adopted in Ohio. In *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177, this court held that "[w]here the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Zanco maintains that this principle commands the result that a duty to defend arises under the circumstances of the case *sub judice.* For the following reasons, we disagree.

The insurance contracts issued to Zanco from Michigan Mutual were termed "comprehensive general liability insurance." Included in both policies were the following provisions:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * Coverage B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such * * * property damage * * *."

Zanco maintains, and the court of appeals agreed, that the counterclaim alleged "property damage" caused by an "occurrence" as those terms are defined in the policies.[2] Although a perfectly credible argument can be made

---

[2] The insurance policy in effect from October 22, 1973 to October 22, 1976, defined "property damage" as: "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof, at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

This insurance policy defined "occurrence" as: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The insurance policy in effect from October 22, 1971 to October 22, 1973, defined "property damage" as: "injury to or destruction of tangible property."

This insurance policy defined "occurrence" as: "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

that the allegations in the Pinecrest counterclaim were within these initial provisions for coverage, the insurance contracts must be examined in their entirety to determine if there are any applicable exceptions to their coverage. A careful review of the exclusions contained in the policies reveals that Michigan Mutual owed no duty to defend under these facts.

The policies of insurance in question specifically exclude from coverage, *inter alia,* the following:

(1)  property damage to work performed by or on behalf of the insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith (the "work performed" exclusion);

(2)  damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein (the "sistership" exclusion);

(3)  property damage to premises alienated by the named insured arising out of such premises or any part thereof (the "alienation" exclusion); and

(4)  property damage to the named insured's products arising out of such products or any part of such products (the "product" exclusion).

The Pinecrest counterclaim alleged that Zanco breached its duty to construct the condominiums in a workmanlike manner, thereby causing defects in the structure. Zanco did not deny such defects, but rather claimed that the fault lay with its suppliers, who allegedly furnished Zanco with defective materials. It becomes immediately apparent that the "work performed" exclusion has direct application to these facts. It is equally evident that the "product" exclusion is operative here.

The courts below each found that at least two of the four exclusions listed above applied to the Pinecrest counterclaim. Clearly, the policies were never intended to insure the integrity or quality of Zanco's product. The allegations of the counterclaim claimed damages for faulty construction by Zanco, or at least that Zanco used defective materials. Since those allegations do not fall within the coverage provided, no duty to defend existed.

We therefore conclude that the courts below correctly resolved this dispute, and the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

Ford, Dahling, Locher and C. Brown, JJ., concur.

Holmes, J., concurs separately.

Celebrezze, C.J., and J. P. Celebrezze, J., dissent.

FORD, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

DAHLING, J., of the Eleventh Appellate District, sitting for SWEENEY, J.

HOLMES, J., concurring. Although I dissented to the majority opinion in *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177, 181, I am in complete agreement with the conclusion reached by the majority in the present case.

It was my view in *Willoughby Hills, supra,* that the respective complaints did not state a claim which was potentially within the ambit of policy coverage. Under the terms of the insurance policy, the insurer only had a duty to defend if a suit against the insured sought damages for bodily injury or property damage caused by an occurrence. The policy defined "occurrence" in terms of damages caused accidentally and the complaints alleged damages caused by the specific intent to do harm. Therefore, the insurer had no duty to defend the lawsuits.

Here, the counterclaim alleged that Zanco failed to construct the condominium complex in a workmanlike manner. The insurance policies specifically excluded coverage for such claims. Therefore, I believe that the majority is correct in its finding that no duty to defend existed on the part of the insurance company.

CELEBREZZE, C.J., dissenting. By affirming the judgment of the court of appeals, the majority disregards the impact of this court's recent holding in *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177. I must therefore dissent.

After our decision in *Willoughby Hills, supra,* the question of whether a duty to defend exists will fall into essentially one of three categories. These are as follows:

1. Where the duty to defend is unequivocally established by the pleadings, the duty to defend will arise. *Motorists Mutual* v. *Trainor* (1973), 33 Ohio St. 2d 41 [62 O.O.2d 402].

2. Where the pleadings do not unequivocally establish the duty to defend but some doubt exists as to whether a theory of recovery within the policy coverage has been pleaded, the duty to defend arises until such time as the claim is confined to a recovery that the policy does not cover. *Willoughby Hills, supra,* at the syllabus and 179.

3. Where the policy excludes coverage for the claim against the insured, no duty to defend will arise initially. However, given the flexibility of pleadings under our system of notice pleading, the duty to defend may arise at some later stage in the proceedings. *Willoughby Hills, supra,* at 179-180.

While the majority acknowledges the first two of the above categories, it ignores the third within which the instant case reposes. It is evident from Pinecrest's counterclaim that its theory of recovery related to the substandard workmanship and defective materials utilized by Zanco in con-

structing the condominiums. There is no dispute that such a claim is excluded by the policies. For that reason, I would agree that no duty to defend arose initially. I would not, however, foreclose the possibility that the duty to defend could arise at some subsequent point. In the case at bar, even though the counterclaim has been disposed of in favor of Pinecrest, the proceedings therein need to be examined by the trial court to determine whether the theory of Pinecrest's counterclaim remained consistent with the pleadings. If so, Michigan Mutual was under no duty to defend. Nonetheless, if Pinecrest altered its theory of recovery such that the counterclaim was within the policy coverages, Zanco may be in a position to recover its costs of defending the counterclaim.

Accordingly, I would reverse the decision of the court of appeals and remand the cause solely for a determination of whether Pinecrest altered its theory of recovery in its counterclaim so as to bring the claim within the coverages afforded by the policies.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.