**Rebecca MESSER, Plaintiff–Appellant,**

**v.**

**PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellee.**

**No. 88–3754.**

United States Court of Appeals, Sixth Circuit.

Submitted May 15, 1989.

Decided Sept. 11, 1989.

David W. Fais, Robert G. Fais, Columbus, Ohio, for plaintiff-appellant.

Mark A. Johnson, Baker & Hostetler, Columbus, Ohio, for defendant-appellee.

Before MERRITT and KRUPANSKY, Circuit Judges, and HILLMAN, Chief District Judge *.

HILLMAN, Chief District Judge.

This is a diversity action for breach of a group insurance contract governed by Ohio law. The issue on appeal is whether the district court erred in granting summary judgment for appellee Paul Revere Life Insurance Company on appellant Rebecca Messer's claim for double indemnity accidental death benefits under the contract. We affirm the judgment below.

**I.**

Highlights for Children, Inc., insured the life of its employee David Messer under a group contract with Paul Revere. Mr. Messer's policy named his wife Rebecca as beneficiary. Highlights terminated Mr. Messer's employment on June 10, 1986. He died in a motorcycle accident a few days later on July 2. Paul Revere accordingly paid Mrs. Messer the $20,000 death benefit. On October 27, 1987, Mrs. Messer brought this action, contending that Paul Revere owes her an additional $20,000 under the policy's employment termination conversion provisions.

The relevant provisions appear at Section III G. of the policy. Because the precise contractual language is important, rather

---

* The Honorable Douglas W. Hillman, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation.

than paraphrasing that language we reprint pertinent portions in full in the margin.** Mrs. Messer argues that section III G. 4. entitles her to the double indemnity accidental death benefits mentioned in section III G. 3., because during the short period after his termination and before his death Mr. Messer could have made "application for conversion" of his Highlights group policy to an individual policy containing such additional or supplementary benefits. The district court rejected this argument. The court below acknowledged Ohio's well-settled rule that unreasonably ambiguous insurance contract language must be construed against the insurer, but found no such ambiguity in the contract at issue. Rather, the district court concluded "[i]t is clear ... that while ... double indemnity accidental death benefits may be added to an already converted policy if the insured can provide satisfactory evidence of insurability, when an employee dies within the 31–day conversion period Paul Revere is only obligated to pay the amount of insurance that the beneficiary would be entitled to under the conversion policy, that is, a policy without supplementary benefits."

## II.

We review *de novo* the district court's interpretation of the contract. *Davis v. Sears, Roebuck and Co.*, 873 F.2d 888, 893

(6th Cir.1989). We recently summarized the controlling principles of Ohio insurance law as follows:

"In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible." *Burdett Oxygen Co. of Cleveland v. Employers Surplus Lines Ins. Co.*, 419 F.2d 247, 248 (6th Cir.1969) (citing *Farmers' Nat'l Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 94 N.E. 834 (1911)). Where a policy is ambiguous, it is to be liberally construed in favor of the insured. *Fuerstenberg v. Mowell*, 63 Ohio App.2d 120, 122, 409 N.E.2d 1035 (1978). This rule of construction, however, is not applicable if the language is clear, *Fuerstenberg*, 63 Ohio App.2d at 122, 409 N.E.2d 1035, if applying it, would provide an unreasonable or forced interpretation, *Bright v. Ohio Casualty Ins. Co.*, 444 F.2d 1341, 1343 (6th Cir.1971) (citing *Morfoot v. State*, 174 Ohio St. 506, 190 N.E.2d 573 (1963)), or if it would result in an extension of coverage. *West v. McNamara*, 159 Ohio St. 187, 197, 111 N.E.2d 909 (1953).

*United States v. Strip*, 868 F.2d 181, 185 (6th Cir.1989).

In this case, section III G. 4. of the insurance contract obligates Paul Revere to pay Mrs. Messer "the amount of insurance for which [Mr. Messer] was entitled to make application for conversion." As a

** Section III—BENEFIT DESCRIPTION EMPLOYEE LIFE INSURANCE BENEFIT

G. CONVERSION PRIVILEGES

1. Termination of Insurance. If all of the Employee Life Insurance Benefit on the Employee covered under this Policy ceases because of termination of employment ... such Employee shall be entitled to have issued to him by the Paul Revere, without evidence of insurability, an individual policy of life insurance without ... supplementary benefits. Application for the individual policy must be made, and the first premium paid to the Paul Revere, within thirty-one days after such termination....

2. Termination of Policy. If this Policy terminates.... its Employee Life Insurance Benefit for any class of insured Employees, every insured Employee whose Benefit ceases due to such termination and who has been so insured for five years prior to such insurance termination date shall be entitled to have is-

sued to him by the Paul Revere, without evidence of insurability, an individual policy of life insurance without ... supplementary benefits. Application for the individual policy must be made, and the first premium paid to the Paul Revere, within thirty-one days after such termination....

3. Additional Benefits. Provisions for ... double indemnity accidental death benefits may be added to any policy converted hereunder, subject to evidence of insurability satisfactory to the Paul Revere and the usual underwriting practices of the Paul Revere concerning the granting of these features.

4. Payment Upon Death During Conversion Privilege Period. If an Employee dies during the thirty-one days while he is entitled to convert such insurance in accordance with the above paragraphs, the Paul Revere will pay the amount of insurance for which such Employee was entitled to make application for conversion.

terminated employee, Mr. Messer was "entitled to make application for conversion," within the specified time, of his group policy to an individual policy, without supplementary benefits, and also without proof of insurability, under section III G. 1. Likewise, if Highlights had chosen to cancel its group policy, and Mr. Messer had been insured under that policy for five years, Mr. Messer would have been "entitled to make application for conversion" of his group policy to an individual policy, without supplementary benefits, and also without proof of insurability, under section III G. 2.

Mr. Messer was not, however, "entitled to make application for conversion" of his group policy under section III G. 3. Section III G. 3. does not address the right of "conversion." Rather, it provides for the addition of double indemnity accidental death benefits, upon proof of insurability, to "any policy converted hereunder." In other words, no conversion takes place under section III G. 3., because that paragraph becomes operative only after a policy has been converted under sections III G. 1. or III G. 2. It makes no sense practically or legally to read section III G. 3. as a provision for conversion of an already converted policy.

Reading section III G. 3. as an addition provision rather than a conversion provision admittedly contradicts the heading of section G, "Conversion Privileges," although this reading does accord with section III G. 3.'s subheading, "Additional Benefits." Nevertheless, shorthand labels are not the point. We must read the contract as a whole to arrive at its appropriate meaning. *Strip*, 868 F.2d at 185. The substantive language of section III G. 3., regardless of its label, concerns addition of double indemnity accidental death benefits to a previously converted policy.

Similarly, a narrow focus upon section III G. 4.'s use of the word "paragraphs" might produce the conclusion that section III G. 3. is one of the paragraphs under which Mr. Messer was entitled to "make application for conversion." In context, however, the word applies to a period of time in which an insured "is entitled to convert such insurance in accordance with the above paragraphs...." As we have explained, section III G. 3. did not entitle Mr. Messer to convert anything. Therefore, reading the contract as a whole, the paragraphs referred to in section III G. 4. are sections III G. 1. and III G. 2., not section III G. 3.

We recognize that the contract at issue contains some ambiguity, but only the foregoing interpretation is reasonable under all the circumstances. *See King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1381 (1988) (rule of strict construction against insurer and in favor of insured applies only "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation"). Any contrary interpretation that would allow payment of double indemnity accidental death benefits would contradict the strictures of Ohio law summarized in *Strip*.

For example, such an interpretation would have to ignore the plain language of sections III G. 1. and III G. 2. providing that conversion policies will not contain supplementary benefits. It would likewise necessarily contradict section III G. 3.'s unambiguous prohibition of double indemnity accidental death coverage without proof of insurability. The Ohio courts, we believe, would certainly view an interpretation containing such plain conflicts as "unreasonable or forced." *Strip*, 868 F.2d at 185.

Moreover, an interpretation of the contract including double indemnity accidental death benefits as a feature for which a terminated employee may "make application for conversion" would create an unintended windfall for beneficiaries like Mrs. Messer, whose husband may or may not have qualified for such benefits, but happened to die within the conversion period. This creation of a right in a class of terminated employees, who need not show proof of insurability to obtain double indemnity accidental death benefits, while employees in good standing must still produce such proof, would undoubtedly amount to an

"extension of coverage" prohibited by Ohio law. *Strip*, 868 F.2d at 185.

In light of the foregoing, Mr. Messer had no right to "make application for conversion" of his Highlights group policy to an individual policy containing double indemnity accidental death benefits. Because Mrs. Messer is not entitled to such benefits as beneficiary of the contract, we AFFIRM the judgment of the district court.

MERRITT, Circuit Judge, dissenting.

The only issue on appeal is whether the post-termination of employment conversion provisions of the policy entitled the plaintiff to the double indemnity accidental death benefit.

Section G of the insurance policy, labeled "Conversion Privileges," consists of five numbered paragraphs. The first paragraph entitles an employee, "to have issued to him ... *without evidence of insurability,* an individual policy of life insurance without disability or supplementary benefits. Application for the individual policy must be made, and the first premium paid to the Paul Revere, within thirty-one days after such termination." (Emphasis added). The third paragraph provides for additional benefits to be added to the converted policy subject to evidence of insurability. The fourth paragraph defines the conditions and amount to be paid if death occurs during the conversion privilege period: "If an Employee dies during the thirty-one days while he is entitled to convert such insurance in accordance with the above *paragraphs,* the Paul Revere will pay the amount of insurance for which such Employee *was entitled to make application for conversion."* (Emphasis added).

The Court frames the issue as whether the post-termination conversion provisions of Section G of the policy entitled the plaintiff to the double indemnity accidental death benefit despite the fact that plaintiff's husband did not make an application for this additional benefit prior to his death. Reviewing the relevant contract provisions, the Court concludes that the insurance contract is clear and unambiguous and finds that the first paragraph

*only* of the five paragraph conversion section applied to the deceased. The Court reasons that because supplementary double indemnity benefits could be added to an already converted policy only if the insured could provide satisfactory evidence of insurability, Paul Revere is only obligated to pay the amount of a policy without double indemnity benefits. The Court appears to concede that the deceased could have applied for double indemnity accidental death benefits "to be added" to the converted policy but nevertheless still concludes under paragraph 4 that Paul Revere is obligated to pay the plaintiff only $20,000. Dist.Ct.Op. at 4. Only after the conversion of a policy may an employee add double indemnity accidental death benefits.

The Court seems to ignore the clear and unambiguous literal language of paragraph 4 which expressly refers to the above *paragraphs* of the conversion privileges section, including the language of paragraph 3 addressed to additional benefits. My reading of the contract leads me to conclude that Paul Revere made a distinction between those benefits a terminated employee could obtain without evidence of insurability (paragraph 1) and those benefits for which he could apply only with evidence of insurability (paragraph 3). Paragraph 4 informs the reader that both paragraphs 1 and 3 apply to one who dies within the conversion period.

Policies such as the one at issue in this case are written for lay persons. In light of the literal language of paragraph 4 which appears explicitly to include the benefits for which one could apply in the above *paragraphs,* if Paul Revere meant to change the meaning of the sentence and to deny double indemnity coverage to one who died within the conversion period, the company should have written a proviso or exclusion which states its intent to limit that specific benefit.

Additionally, Ohio law provides that when interpreting an insurance contract, the contract should be construed liberally in favor of the insured if the language of the contract is ambiguous. *Munchick v. Fidelity & Casualty Co.,* 2 Ohio St.2d 303,

209 N.E.2d 167 (1965) (doubts arising from language used in automobile policy drafted by insurer were to be resolved in favor of insured). Ohio continues to adhere to this concept. Most recently the Ohio Supreme Court found that "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1380–81 (1988) (citations omitted).

Even assuming arguendo that the language of paragraph 4 is not to be given a literal interpretation and can be said to be "ambiguous" as to the double indemnity benefits available to one who dies within the insurance period, Ohio law clearly dictates that this kind of ambiguity be resolved in favor of the beneficiary.

Accordingly, I respectfully dissent.