abuse dissuades the jury from its purpose of deciding whether a particular act of abuse actually took place.

The type of evidence based on percentages offered by Riley must have a demonstrable foundation to be admissible. From our review of the record, we find that no scientific studies or authoritative treatises were presented at trial or on appeal. Until the scientific community develops a precise schema of a sexual abuse offender that is sufficiently reliable, if that is possible, profile evidence must be excluded. It fails to assist the trier of fact and suggests highly prejudicial character inferences that confuse the jurors and dissuade them from their truth-seeking function.

Based upon our disposition of the second assignment of error and the fourth assignment of error, we reverse the conviction and remand the cause for a new trial to be conducted in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

CACIOPPO and CICIRIGLIANO, JJ., concur.

---

**GENERAL ACCIDENT INSURANCE COMPANY et al., Appellants,**

v.

**INSURANCE COMPANY OF NORTH AMERICA et al., Appellees.**

[Cite as *General Acc. Ins. Co. v. Insurance Co. of North America* (1990), 69 Ohio App.3d 52.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 54974.

Decided Aug. 6, 1990.

*Arter & Hadden, Hugh M. Stanley, Jr.,* and *Anthony J. Damelio, Jr.,* for appellants.

*Gallagher, Sharp, Fulton & Norman, Michael Gallagher* and *Mark B. Smith,* for appellees.

*Reminger & Reminger* and *Hugh Bode,* for National Union Fire Insurance Company of Pittsburgh.

*Thompson, Hine & Flory* and *Brett K. Bacon,* for Gerling–Konzern and Nordstern.

---

JOHN F. CORRIGAN, Judge.

Plaintiffs, General Accident Insurance Company, McKee–Otto, Davy McKee Corp., Davy, Inc., Davy International, Inc., and Dr. C. Otto & Co., GMBH, appeal from the judgment of the trial court which granted partial summary judgment to defendant, Insurance Company of North America, in plaintiffs' action for breach of contract.[1] For the reasons set forth below, we affirm.

I

In 1979, McKee–Otto, a joint venture comprised of Davy McKee Corp. and Dr. C. Otto & Co., GMBH entered into a contract with Bethlehem Steel whereby McKee–Otto agreed to "design, install, furnish, fabricate, erect and place into service one 6 meter, 80 (nominal) oven coke battery * * * " at Bethlehem's Sparrows Point Plant in Baltimore, Maryland. This agreement provided that:

"All work performed and materials furnished shall be of the kind and quality described in said plans and specifications and the provisions hereof and shall be first class throughout. * * * "

Following completion of the oven coke battery, Bethlehem notified McKee–Otto that it considered the work defective and out of compliance with the contract specifications. Thereafter, Bethlehem brought suit against McKee–Otto and its partners, Davy McKee Corp. and Dr. C. Otto & Co., GMBH. Bethlehem also joined Davy McKee Corp., Davy, Inc., Davy International, Inc., and Davy Corporation Limited in this action due to their alleged affiliation with McKee–Otto. In relevant part, the Bethlehem complaint alleged:

"18. Although Sparrows Point Battery 'A' began operating on April 23, 1982, it contains a number of substantial defects and deficiencies, has defective and deficient materials, is not 'first class throughout', and fails to conform with the contract, contract plans, and contract specifications in significant respects. Among many other defects and deficiencies, the bricks comprising the oven walls have moved and are no longer properly aligned, and

---

1. While this order did not dispose of all of the claims of all of the parties, we note our jurisdiction in accordance with *General Acc. Ins. Co. v. Insurance Co. of North America* (1989), 44 Ohio St.3d 17, 22–23, 540 N.E.2d 266, 271–272.

the oven and the oven walls are not capable of withstanding coking pressure of at least 2 psi as called for in the contract specifications.

"* * *

"25. McKee–Otto's has failed to engineer, design, fabricate, and construct Sparrow's Point Battery 'A' in a substantial and workmanlike manner, and the performance of its work and the materials supplied under the contract are not 'first class throughout' but are defective and deficient and are not in accordance with the contract, plans, and specifications.  * * *

"* * *

"27. All of the defective work, defective materials, non-compliance with the contract specifications, deterioration and movement of the bricks in the oven walls, along with failure to design, construct, and deliver Sparrows Point Battery 'A' with walls that are able to withstand at least 2 psi coking pressure * * * are breaches of McKee–Otto's express warranties * * * [;]

"30.  * * * are breaches of McKee–Otto's implied warranty of merchantability in its contract with Bethlehem * * * [;]

"* * *

"33.  * * * are breaches of McKee–Otto's implied warranty of fitness for particular purpose in its contract with Bethlehem * * * [;]

"* * *

"36.  * * * are breaches of McKee–Otto's implied warranty of workmanlike performance; [and manifest negligence;]

"43.  * * * McKee–Otto's failure to engineer, design, and/or construct for Bethlehem a coke oven battery free from such defects and deficiencies has rendered it unreasonably dangerous for its intended use * * *."

At all relevant times, McKee–Otto, Davy McKee Corp., Davy, Inc., and Davy International, Inc. were insured under a policy of Architects & Engineers Professional Liability Insurance, issued by General Accident Insurance, which provided in relevant part:

"The Company will pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages by reason of any act, error or omission committed or alleged to have been committed by the Insured, or any person or organization for whom the Insured is legally liable provided always that:

"* * *

"(b) The Insured's legal liability arises out of the performance of professional services as described in the Declarations[.]  * * * "

The declarations page in turn described covered professional services as:

*"Construction Management, Construction Supervision, Architectural and Engineering services* including, but not limited to, studies, *designs, drawings, specifications,* estimating, procurement of materials and/or services, inspection, expediting, financial planning, construction liaison and/or advice, costing, scheduling, and cooperation; also including review and/or recommendations pertaining to any of the above." (Emphasis added.)

McKee–Otto, Davy McKee Corp., Davy, Inc., and Davy International, Inc. were also insured under a comprehensive general liability policy delivered in Ohio by the Insurance Company of North America ("INA"), the relevant terms of which include:

"COVERAGE PART

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"to which this insurance applies, caused by an occurrence [2] and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements." (Footnote added.)

"EXCLUSIONS

"This insurance does not apply:

" * * *

"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

"1. a delay in or lack of performance by or on behalf of the Named Insured or any contract or agreement, or

"2. the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance quality, fitness or durability warranted or represented by the Named Insured;

---

**2.** "Occurrence" is in turn defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."

"but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an insured.

" * * *

"(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of the use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

"Endorsement 2

"It is agreed that the insurance does not apply to bodily injury, or property damage arising out of the rendering of or the failure to render any professional services by or for the Named Insured, including

"1.   the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications;  and

"2.   supervisory, inspection or engineering services."

Upon filing of the Bethlehem complaint, demand was made of INA for defense and indemnity.  INA denied that its insurance was applicable to the Bethlehem allegations, however, and General Accident Insurance assumed the defense.

General Accident subsequently entered into a settlement with Bethlehem. INA contributed a "loan" toward this settlement, but reserved its right to later contest its obligation to provide any defense or indemnification.

On March 3, 1985, General Accident, as subrogee and assignee of McKee–Otto, Davy McKee Corp., Davy, Inc., and Dr. C. Otto & Co., GMBH ("the insureds"), filed a complaint for declaratory judgment and compensatory damages against INA and other defendants who are not parties to this appeal, alleging, *inter alia*, that INA breached its duty to defend pursuant to its comprehensive general liability policy.  INA filed an answer in which it denied any duty to defend.  In addition, INA set forth a counterclaim seeking return of the money which it had contributed to the Bethlehem settlement.

INA, as well as General Accident and the insureds, subsequently moved for partial summary judgment on the issue of INA's duty to defend.  The trial

court granted INA's motion and General Accident commenced this appeal.[3]

## II

In their first three claims, General Accident and the insureds challenge the trial court's grant of summary judgment to INA, contending that INA was obligated to defend the insureds because the scope of the Bethlehem complaint "encompasses" three "occurrences" which are at least arguably or potentially within the coverage afforded by the INA policy. They further claim that exclusions (m) and (p), and Endorsement 2 of the policy do not obviate INA's duty to defend.

### A. *Governing Law*

As a preliminary matter, we must first consider whether the parties' dispute should be evaluated with reference to the laws of Ohio, the place in which the INA policy was obtained, or the laws of Maryland, the location of the Sparrows Point Plant. INA urges us to apply Maryland law in accordance with Restatement of the Law 2d, Conflict of Laws (1971) 610, Section 193, which provides:

"Contracts of Fire, Surety or Casualty Insurance

"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6[4] to the transaction and the parties, in which event the local law of the other state will be applied." (Footnote added.)

We note, however, that Comment *a* limits the scope of Section 193, as it provides:

"There may be no principal location of the insured risk * * *. In such a case, the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort

---

3. While INA did not file a formal cross-appeal, it has set forth two errors in its brief. Because we affirm the judgment of the trial court, we do not separately consider these errors, but will instead address them insofar as they are relevant to our disposition of General Accident's assignments of error. Cf. R.C. 2505.22; *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160, 2 OBR 704, 443 N.E.2d 184.

4. Restatement of the Law 2d, Conflict of Laws (1971), Section 6, sets forth the fundamental choice-of-law principles.

must be determined in accordance with the principles set forth in the rule of § 188."

Section 188, in turn, provides in relevant part:

"(2) In the absence of an effective choice of law by the parties * * *, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Section 188 was adopted by the Supreme Court in *Gries Sports Enterprises, Inc. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, syllabus. Later, in *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 45, 21 OBR 328, 329, 487 N.E.2d 568, 570, the Supreme Court approved application of Section 188 in determining the law to be applied in an insurance dispute.

Applying the foregoing, we note that the INA policy did not set forth a principal location, or the location of a single insured risk, but, rather, expressly indicated that the insurance extended to "all locations" of the insureds, and for "all operations." The policy also failed to designate a choice of governing law. Accordingly, we hold that choice of law questions should be resolved in accordance with Section 188.

In this connection, we note that the INA policy was delivered in Ohio to Davy, Inc., an Ohio corporation. Additional insureds Davy International, Inc., Davy McKee Corp., and McKee–Otto are likewise based in Ohio. The place of performance and location of the subject matter were not elaborated but were coextensive with all covered activities. We therefore find that pursuant to Section 188, Ohio law is applicable to resolution of the issue of INA's duty to defend. Accord *Borden, Inc. v. Affiliated F M Ins. Co.* (S.D.Ohio 1987), 682 F.Supp. 927, 929, affirmed without opinion (C.A. 6, 1989), 865 F.2d 1267 (where insurance contracts were negotiated and entered into in Ohio, insured was a corporation with principal business in Ohio, and place of performance and subject matter were to be in all states where insured conducts its operations, Ohio had most significant relationship to insurance contract, and Ohio law would be applied); *Detrex Chemical Industries, Inc. v. Employers Ins. of*

*Wausau* (N.D.Ohio 1987), 681 F.Supp. 438, 456 (Wisconsin law would be applied in determining trigger of coverage where insurance extended to insured's Michigan plant, but was executed in Wisconsin). See, also, *Comstock Ins. Co. v. Thomas A. Hanson & Assoc., Inc.* (1988), 77 Md.App. 431, 550 A.2d 731 (applying Maryland rule that an insurer's liability is determined in accordance with the law of the place where the contract was made, Illinois law would be applied to dispute over whether professional negligence policy provided coverage for architect's mistake in cost estimate and design of Maryland motel).

### B. *INA's Duty to Defend*

In *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus, the Supreme Court held that:

"The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured."

Later, in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus, the Supreme Court considered an insured's duty to defend where the complaint does not clearly bring the matter within the coverage of the policy. The court stated:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

In *Zanco v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513, the Supreme Court held that an insurance company had no duty to defend its insured against a counterclaim which alleged that the insurer breached its duty to build in a workmanlike manner, as this claim fell within the "work performed" and defective "product" exclusions to coverage under the policy.

Applying the foregoing, we note that the complaint plainly alleges that the coke oven battery contains substantial defects and deficiencies and fails to conform to contractual plans and specifications. From this Bethlehem asserted that the insureds had: (1) breached the contract; (2) breached implied warranties of merchantability; (3) breached implied warranties of fitness for a

particular purpose; (4) breached implied warranties of workmanlike performance; (5) acted negligently; and (6) incurred strict liability. While it could be argued that these allegations describe property damage within the coverage provision of the INA policy, see *Zanco v. Michigan Mut. Ins. Co., supra,* 11 Ohio St.3d at 115–116, 11 OBR at 414, 464 N.E.2d at 514, exclusion (m) clearly bars coverage as it excludes from coverage work performed by the insured and damages to the insured's products. *Id.* In addition, Endorsement 2 clearly bars coverage as it excludes coverage for property damages arising out of the rendering of professional services including plans, designs and specifications. Thus, we hold that the trial court properly concluded that INA had no duty to defend.

General Accident and the insureds urge a contrary result by claiming that the Bethlehem complaint "encompasses" the following "occurrences" for which, they claim, coverage is applicable:

"1. The Integration of Defective Coke Ovens Into The Steel Mill Prevented The Use of Lean Gas In The Coking Process Thereby Subjecting Bethlehem To A Separate And Distinct Property Loss—And Occurrence Causing Property Damage—Triggering INA's Duty To Defend McKee–Otto And The Davy Companies.

"2. The Integration Of Defective Coke Ovens By McKee–Otto Into The Bethlehem Steel Mill Resulted In A Diminution In Value Of The Mill Itself— An Occurrence Causing Property Damage—Triggering INA's Duty To Defend.

"3. The Integration Of Defective Coke Ovens Into The Bethlehem Steel Mill by McKee–Otto Resulted In Property Damage Through Loss Of Use Of The Mill—An Occurrence Causing Property Damage—Not Excluded By The INA Policy."

We note, however, that nowhere in the Bethlehem complaint is there even a passing reference to decreased lean gas use, diminution in the value of the mill or damages through loss of use of the mill. Accordingly, these proposed "occurrences" cannot fairly be considered allegations within the Bethlehem complaint, and they therefore cannot arguably or potentially support coverage.

In accordance with the foregoing, General Accident's and the insured's first three claims are overruled.

## III

In their fourth claim, General Accident and the insureds contend that the trial court erroneously "based" its summary judgment order upon the names of the General Accident and INA policies. This claim is unsupported by the

record. For while the court stated that the "names of the two policies here involved are not unimportant," *General Acc. Ins. Co. v. Insurance Co. of North America* (Nov. 23, 1987), Cuyahoga C.P. No. 88771, unreported, at 9, this remark followed a thorough analysis of property damage subject to coverage, and the relevant policy exclusions and endorsement.

Accordingly, this claim is overruled.

## IV

In their final challenge, General Accident and the insureds posit that even assuming that the relevant policy exclusions are applicable to bar coverage, they are only applicable with respect to McKee–Otto, the actual builder of the coke ovens. This claim lacks merit as INA's obligation is dependent upon whether the type of loss sustained is included within the policy. Cf. *Willoughby Hills v. Cincinnati Ins. Co., supra; Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, paragraph two of the syllabus. Thus, coverage is clearly not available for an excluded type of loss, regardless of whether the complaint asserts that a party is primarily or derivatively liable for that loss.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PRYATEL and FORD, JJ., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, and ROBERT B. FORD, J., of the Geauga County Court of Common Pleas, sitting by assignment.