961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Appellee,
v.
The CHARDON RUBBER COMPANY, Defendant-Appellant.
 No. 91-3306.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and CHURCHILL, District Judge*
 PER CURIAM.
 
 
 1
 Chardon Rubber Company ("Chardon") appeals the district court's determination that its insurer, United States Fire Insurance Company ("U.S. Fire"), had no duty to defend or indemnify Chardon in a prior action brought by International Component Manufacturing ("ICM") against Chardon. We affirm.
 
 I.
 
 2
 Chardon supplied a rubber compound to American Pro-Mold, Inc. ("Pro-Mold"). Pro-Mold used the rubber to manufacture spark plug boots for ICM. ICM sold the spark plug boots to Carol Cable Company, which used the boots as a component in wire harnesses for automobile engines. Carol Cable then sold the wire harnesses to Fram. Fram subsequently discovered that the boots were defective and had to be removed from the wire harnesses.
 
 
 3
 Fram brought a claim against Carol Cable for the defective boots. Carol Cable made a claim against ICM after it was forced to recall the defective spark plug boots. ICM settled this claim. ICM then brought the suit underlying the present action against Chardon, alleging breach of warranty by Chardon arising from its manufacture of the defective rubber compound. ICM sought damages for the losses it had suffered due to Carol Cable's recall of the spark plug boots.
 
 
 4
 Chardon settled the suit with ICM and demanded indemnification from U.S. Fire under its commercial "umbrella" insurance policy. U.S. Fire then brought the present declaratory judgment action in the United States District Court for the Northern District of Ohio, seeking a declaration that it had no duty to defend or indemnify Chardon from ICM's action.
 
 
 5
 The district court granted U.S. Fire's motion for summary judgment. The court held that there was no "occurrence" within the meaning of the umbrella policy and thus that U.S. Fire had no duty to defend or indemnify Chardon. However, because U.S. Fire initially agreed to defend Chardon under a reservation of rights, the court ordered U.S. Fire to pay Chardon's reasonable attorney's fees incurred in its defense. This appeal followed.
 
 II.
 
 6
 The parties agree that Ohio law governs this case. We apply general principles of contractual interpretation to guide our interpretation of the insurance contract. We review de novo the district court's interpretation of the contract. Messer v. Paul Revere Life Ins. Co., 884 F.2d 939, 940 (6th Cir.1989). We recently summarized the controlling principles of Ohio insurance law as follows:
 
 
 7
 "In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible." Burdett Oxygen Co. of Cleveland v. Employers Surplus Lines Ins. Co., 419 F.2d 247, 248 (6th Cir.1969) (citing Farmers' Nat'l Bank v. Delaware Ins. Co., 83 Ohio St. 309, 94 N.E. 834 (1911)). Where a policy is ambiguous, it is to be liberally construed in favor of the insured. Fuerstenberg v. Mowell, 63 Ohio App.2d 120, 122, 409 N.E.2d 1035 (1978). This rule of construction, however, is not applicable if the language is clear, Fuerstenberg, 63 Ohio App.2d at 122, 409 N.E.2d 1035, if applying it, would provide an unreasonable or forced interpretation, Bright v. Ohio Casualty Ins. Co., 444 F.2d 1341, 1343 (6th Cir.1971) (citing Morfoot v. State, 174 Ohio St. 506, 190 N.E.2d 573 (1963)), or if it would result in an extension of coverage. West v. McNamara, 159 Ohio St. 187, 197, 111 N.E.2d 909 (1953).
 
 
 8
 Messer, 884 F.2d at 940 (quoting United States v. A.C. Strip, 868 F.2d 181, 185 (6th Cir.1989)). With these principles of contractual interpretation in mind, we turn to Chardon's claim that the "occurrence" provision of the contract provides coverage in the present situation.
 
 
 9
 U.S. Fire's duty to defend and/or indemnify Chardon depends upon whether an "occurrence" within the meaning of the U.S. Fire policy has taken place. The U.S. Fire policy defines an "occurrence" as:
 
 
 10
 (1) an accident, including continuous or repeated exposure to substantially the same general harmful conditions that results in "Bodily Injury" or "Property Damage" that is not expected or intended by the "insured."
 
 
 11
 Chardon concedes that the "continuous or repeated exposure" language of the definition of "occurrence" is not relevant here, and thus the first question is whether an "accident" has taken place.
 
 
 12
 Chardon notes that the term "occurrence" has been construed to be broader than the term "accident." See, e.g., Buckeye Union Ins. Co. v. Liberty Solvents and Chemicals, 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984); Grand River Lime Co. v. Ohio Casualty Ins. Co., 32 Ohio App.2d 178, 289 N.E.2d 360 (1972). These cases are unavailing here because they involved interpretation of the "continuous or repeated exposure" language. The relevant portion of the policy in this case defines "occurrence" as an "accident ... that causes property damage." Therefore, we must first construe the term "accident" to determine whether there was an "occurrence" under the policy.
 
 
 13
 U.S. Fire argues that the term "accident" is to be interpreted to mean "only an unforeseen, sudden and unexpected event, often accompanied by the manifestation of force." U.S. Fire claims that under this definition the failure of the rubber compound in the spark plug boots was not an "accident" under the policy. U.S. Fire claims that the failure of the rubber compound was merely a form of product failure, similar to a breach of warranty. Several cases have applied this principle and concluded that the failure of a product which results in purely economic harm does not fall under the definition of an "accident" that causes "property damage." See, e.g., Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co., 508 F.2d 417 (7th Cir.1975) (Ohio law); Stevens Indus., Inc. v. Maryland Gas Co., 391 F.2d 411 (5th Cir.), cert. denied, 392 U.S. 926 (1968); E.K. Hardison Seed Co. v. Continental Gas Co., 410 S.W.2d 729 (Tenn.App.1967). U.S. Fire contends that the insurance policy does not provide coverage for the purely economic consequences that result when an insured manufactures a product that fails to perform as warranted.
 
 
 14
 Chardon responds that the fact that the claims here involve a breach of warranty does not remove them from the category of "accident" as defined in the insurance policy. Chardon relies on Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir.1962), a case under Michigan law where this court held that "[t]he word 'accident' is common in most liability policies and should not be construed in this type of case as not including claims involving negligence or breach of warranty." Id. at 153. In Bundy Tubing, the failure of the plaintiff's tubing caused water leakage that damaged the house in which it was installed. This court held that "[t]he failure of the tubing ... was unforeseen, unexpected and unintended. Damage to the property was therefore caused by accident." Id. Chardon claims that the broad definition of "accident" in Bundy Tubing indicates that the term "accident" in U.S. Fire's policy covers the failure of the rubber compound. See also Elco Industries, Inc. v. Liberty Mutual Ins. Co., 90 Ill.App.3d 1106, 414 N.E.2d 41 (1980).
 
 
 15
 Bundy Tubing and Elco, however, are limited to incidents involving damage to tangible property other than the insured's own product as a result of the breach of warranty. Thus, even if we broadly construe the term accident to include product failures, Chardon must still show that the accident caused "property damage" as defined in the policy. As explained below, we conclude that Chardon presented insufficient evidence of "property damage" to create a genuine issue of material fact.
 
 
 16
 The U.S. Fire policy defines "property damage" as:
 
 
 17
 (1) Physical injury to or destruction of tangible property including any resulting loss of use of that property;
 
 
 18
 (2) Loss of use of tangible property that has not been physically injured if caused by an occurrence. (Emphasis added).
 
 
 19
 U.S. Fire contends that there has been no "physical injury to or destruction of tangible property" other than to the rubber compound in the spark plug boots. Therefore, U.S. Fire claims that any loss of use of the wire harnesses did not result from damage to the wire harnesses, but rather from the removal of the spark plug boots. In support of this contention, U.S. Fire points out that ICM did not allege any "physical injury to or destruction of property" in its complaint against Chardon. Because U.S. Fire's duty is only to reimburse for damages for which Chardon becomes liable, U.S. Fire cannot be liable for property damage that never was alleged. U.S. Fire's duty to defend or indemnify is limited to the allegations of ICM's complaint against Chardon. See Willoughby Hills v. Cincinnati Ins. Co., 9 Ohio St.3d 177, 459 N.E.2d 555 (1984). ICM's complaint alleged only a breach of warranty and not "property damage" as that term is used in the insurance policy.
 
 
 20
 In an effort to show "property damage," Chardon introduced the affidavit of Robert Rose, a vice president for engineering at Carol Cable. Rose claimed that "the removal of the defective [spark plug boots] caused damage to some of the positioning of the distributor terminals" and that "the distributor terminals were internally scratched in their removal" from the wire harness. Rose's statements allege physical injury as a result of Carol Cable's removal of the spark plug boots, not damage directly caused by the failure of Chardon's rubber compound. This is insufficient to preclude summary judgment because the policy only covers negligent manufacture that results in property damage; not property damage that arises from efforts to remedy the negligent manufacture. Hamilton Die Cast, 508 F.2d at 420.
 
 
 21
 The Ohio Supreme Court addressed a similar issue in Zanco, Inc. v. Michigan Mutual Ins. Co., 11 Ohio St.3d 114, 464 N.E.2d 513 (1984). In that case, Zanco sued several of its suppliers for allegedly furnishing defective materials to Zanco, who was a builder and real estate developer. A condominium association, whose condominiums Zanco had built with the allegedly defective materials, joined the suit as a party defendant and counterclaimed against Zanco. Zanco sought a defense for the counterclaim from its insurer, Michigan Mutual.
 
 
 22
 The Ohio Supreme Court held that Michigan Mutual's policy did not cover Zanco's defective construction despite the fact that the structural damage to the house allegedly was caused by Zanco's use of defective materials. Id. at 116, 464 N.E.2d at 515. The court held that the entire house was Zanco's product and that the failure to construct the house in a workmanlike manner was not covered under the policy. The court stated "[c]learly, the policies were never intended to insure the integrity or quality of Zanco's product." Id., 464 N.e.2d at 515. It is clear that the Ohio Supreme Court views the defective manufacture of a product as a breach of warranty where there is no collateral property damage to property other than the insured's property.
 
 
 23
 In the present case, the spark plug boots were made entirely from Chardon's rubber compound. The damages sought in ICM's complaint were for the cost to recall the spark plug boots because they were not performing properly due to Chardon's defective manufacture of its rubber compound. There is no evidence other than the Rose affidavit which shows that Chardon's breach of warranty caused an "accident" resulting in "property damage" to another's property. Without such a showing, there is no coverage under the U.S. Fire policy. See Hamilton Die Cast, 508 F.2d at 420.
 
 
 24
 Chardon also alleges that Carol Cable's businesses interruption costs amount to a covered "loss of use" of property under the insurance policy. This claim is without merit because such purely economic losses are not considered "property damage." See McDowell-Willman Engineering Co. v. Hartford Accident & Indemnity Co., 711 F.2d 521 (3d Cir.1983) (business interruption losses do not amount to injury or destruction of tangible property under Ohio law). Nor do Carol Cable's business interruption losses fall under the provision covering the loss of use of property that has not been physically injured. That provision only covers losses "caused by an occurrence." As explained above, there was no "occurrence" in this case.
 
 
 25
 The insured bears the burden of showing facts sufficient to establish coverage under an insurance policy. Sterling Merchandise Co. v. Hartford Ins. Co., 30 Ohio App.3d 131, 506 N.E.2d 1192 (1986). If no set of facts in the complaint establish coverage, then the insurer need not provide a defense. Preferred Risk Ins. Co. v. Gill, 30 Ohio St.3d 108, 507 N.E.2d 1118 (1987). Chardon failed to meet its burden of proof and thus U.S. Fire had no duty to defend or indemnify Chardon from ICM's suit alleging breach of warranty.
 
 
 26
 AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation