OPINION
{¶ 1} Plaintiffs-appellants Ohio Discount Merchandise, Inc., Todd D. Bosley and Toby Bosley appeal the January 30, 2006 Judgment Entry of the Stark County Court of Common Pleas granting Summary Judgment in favor of defendant-appellee Westfield Insurance Co.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Defendant-appellee Westfield Insurance Company issued a Commercial General Liability Policy to plaintiff-appellant Ohio Discount Merchandise, Inc. as the named insured, identified as policy number CWP 3 931 615 and policy number CWP 3 451 550. As the named insured is a corporation, both Todd Bosley and Toby Bosley, as shareholders, directors, officers and employees of the corporation qualify as insureds under the policy. The CGL policy provides coverage for "Personal and Advertising Injury Liability". The policy reads:
 {¶ 3} "COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
 {¶ 4} "1. Insuring Agreement
 {¶ 5} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
 {¶ 6} * * *
 {¶ 7} "2. Exclusions
 {¶ 8} This insurance does not apply to:
 {¶ 9} "a. Knowing Violation Of Rights Of Another
 {¶ 10} "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"
 {¶ 11} * * *
 {¶ 12} "f. Breach Of Contract
 {¶ 13} "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"."
 {¶ 14} Section V of the policy provides the following definitions:
 {¶ 15} "1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
 {¶ 16} "a. Notices that are published include material placed on the internet or on similar electronic means of communication; and
 {¶ 17} "b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered and advertisement.
 {¶ 18} "* * *
 {¶ 19} "14. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
 {¶ 20} "* * *
 {¶ 21} "e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
 {¶ 22} "f. The use of another's advertising idea in your "advertisement"; or
 {¶ 23} "g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."
 {¶ 24} On October 6, 2004, John Edgell and Wealthy Donors, LLC. filed a complaint in the United States District Court for the District of Columbia against Ohio Discount Merchandise, Inc. and appellants Todd Bosley and Toby Bosley, as well as other named defendants. The complaint, attached as Exhibit 1 to Appellants' motion for partial summary judgment, alleged, in pertinent part:
 {¶ 25} "10. In September, 2003, Plaintiff John Edgell, a Washington lobbyist, public relations advisor and business entrepreneur, conceived the idea to produce and market certain political bobbleheads to coincide with the primary and general election campaigns leading up the November, 2004 election.
 {¶ 26} "11. Edgell contacted Defendant Todd Bosley, owner and manager of Bosley Bobbers, a subsidiary of Ohio Discount Merchandise, Inc., to produce the bobbleheads.
 {¶ 27} "12. Edgell and Bosley agreed that Edgell would fully finance the cost of the sculpts and molds used for production, the actual production costs, and also assume the costs arising from any unsold inventory. This arrangement guaranteed predictable revenues for Ohio Discount Merchandise, Inc. ("ODM"), while in exchange Edgell would receive revenues generated from online, wholesale and other transactions.
 {¶ 28} "13. Edgell though his private business, Wealthy Donors, LLC, invested $18,125 to produce 500 bobbleheads each of Democratic primary candidates John Kerry, Howard Dean, and Wesley Clark; as well as 500 bobbleheads each of California gubernatorial candidate Arnold Schwarzenegger and House Majority Leader Tom DeLay.
 {¶ 29} "14. Edgell made an initial installment payment and three subsequent payments to cover the costs of manufacture of five individual sets of sculpts and molds used to manufacture the merchandise. Under his contracts with ODM, Edgell was provided guaranteed "exclusive" ownership of the sculpts and molds.
 {¶ 30} "* * *
 {¶ 31} "20. Defendants engaged in a pattern of delay and misinformation relating to the manufacture, marketing, and sales of the bobbleheads. The production of the bobbleheads was time-sensitive, since few bobbleheads of the Democratic primary candidates would sell after the Democratic candidate was chosen.
 {¶ 32} "* * *
 {¶ 33} "22. On two occasions Todd Bosley willfully, deliberately, and wrongfully misrepresented the facts to Edgell about copyright ownership and licensing issues relating to the design of the bobblehead boxes, in November, 2003 and January, 2004. As a direct and proximate result of these misrepresentations, Plaintiff was sued in a lawsuit in the Central District of California. That case has since been settled. (See Central District of California Case No. CV-04-3821). Plaintiff incurred at least $14,750 in legal expenses as a result of that lawsuit.
 {¶ 34} "23. Todd Bosley had represented to Edgell that he had obtained approval and a copyright license to use photographs on each of the five boxes. Edgell later discovered that most of the packaging on the five bobblehead boxes, including two prominent photographs on the Arnold Schwarzenegger box, were in violation of federal copyright laws.
 {¶ 35} "* * *
 {¶ 36} "25. Edgell agreed to assist with marketing efforts, namely through generating newspaper, television, radio and internet news stories. Plaintiff Edgell provided such assistance, and the bobbleheads and the ODM firm and principals have been mentioned on nearly every national television broadcast and major newspaper. It was apparent that the bobbleheads, particularly the Arnold Schwarzenegger bobblehead were selling at a steady pace, namely through Internet-based sales such as ODM's website wwww.bosleybobbers.com, Edgell's website (which linked to ODM's site), and the auction and "buy it now" function provided on Ebay.
 {¶ 37} "* * *
 {¶ 38} "29. Beginning in mid-December, 2003, Defendants failed to design a promised website, and when completed the URL address was incorrect: "bobbingheadelection.com", not "bobbleheadelection.com". Since the term "bobbinghead" is blocked by most pornography blocking computer software, ODM blocked access for most of the public to Edgell's legitimate website, a development the plaintiff learned of in August, 2004. ODM also delayed for three months sending a promised regular e-mail customer newsletter to their prior customers.
 {¶ 39} "* * *
 {¶ 40} "33. On information and belief, commencing in or about November, 2003 and continuing to the present, while acting jointly and severally, Defendants converted, misappropriated, and otherwise unlawfully, wrongfully and without just cause used the Account and/or the Property of Edgell.
 {¶ 41} "* * *
 {¶ 42} "39. On information and belief, notwithstanding due notice and demand by Plaintiff, Defendants intend to continue to act in a manner so as to (A) disregard Edgell's legal and equitable rights; (B) continue to hold and/or fail to turn over the Account to Edgell; (C) convert and/or misappropriate the Property, including bobbleheads and bobblehead molds; and/or (D) otherwise breach their legal and equitable duties to Edgell.
 {¶ 43} "* * *
 {¶ 44} "68. Defendants intentionally made misrepresentations of fact they knew to be untrue, regarding the sales, profits and accounting of the bobbleheads.
 {¶ 45} "69. These misrepresentations were material to the transactions, plaintiff was justified in relying on them, he relied on them to his detriment, and they caused actual harm to Plaintiff."
 {¶ 46} On June 17, 2005, appellants filed a complaint for declaratory judgment seeking coverage under the "Personal and Advertising Injury Liability" section of the policy. Appellee Westfield counterclaimed for declaratory relief. The parties filed cross-motions for summary judgment. On January 30, 2006, via Judgment Entry, the trial court granted summary judgment in favor of Westfield and overruled appellants' cross-motion.
 {¶ 47} It is from the January 30, 2006 Judgment Entry appellants now appeal, assigning as sole error:
 {¶ 48} "I. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE APPELLANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, DETERMINING THAT THE APPELLEE WAS NOT REQUIRED TO PROVIDE THE APPELLANTS WITH A DEFENSE UNDER A POLICY OF LIABILITY INSURANCE COVERAGE, TO APPELLANTS' PREJUDICE."
 I {¶ 49} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36.
 {¶ 50} Civ.R. 56(C) states, in pertinent part:
 {¶ 51} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 52} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996),75 Ohio St.3d 280.
 {¶ 53} It is based upon this standard we review appellant's assignment of error.
 {¶ 54} Appellants assert the terms and provisions of the policy at issue entitle them to coverage under the policy in light of the claims alleged in the Edgell action. Specifically, appellants assert Edgell avers appellants used Edgell's idea to market the bobble heads, and the bobble heads were all merchandise manufactured from the artwork, sculpts and molds owned exclusively by Edgell; therefore, the allegations in theEdgell complaint trigger Westfield's duty to defend under the "Personal and Advertising Injury" coverage of the policy.
 {¶ 55} Initially, we note, if the allegations of the complaint state a claim that is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept defense of the claim. Willoughby Hillsv. Cincinnati Ins. (1984), 9 Ohio St.3d 177; Westfield Companiesv. O.K.L. Can Line, 155 Ohio App. 3d 747, 2003-Ohio-7151. Furthermore, when the duty to defend arises, the duty extends to all claims alleged in the complaint. Chemstress Consultant Co.v. Cincinnati Ins. Co. (1998), 128 Ohio App. 3d 396. The duty to defend continues until the allegations against the insured are narrowed to only claims which are clearly excluded from coverage.Willoughby Hills, supra. Conversely, if the conduct alleged in the complaint is indisputably outside the scope of coverage there is no duty to defend. Cincinnati Ins. Co v. Anders (2003),99 Ohio St.3d 156. Also, an insurer need not defend where the policy's exclusions apply to preclude coverage. Zanco, Inc. v.Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114.
 {¶ 56} Paragraph 22 of the Edgell complaint alleges appellants willfully, deliberately and wrongfully misrepresented facts "about copyright ownership and licensing issues relating to the design of the bobblehead boxes." The policy at issue defines "Personal and advertising injury" to include "injury, including consequential `bodily injury' arising out of the insured's "infringing upon another's copyright, trade dress or slogan" in the insured's advertisement.
 {¶ 57} We find appellant's use of the copyrighted photographs on the bobblehead boxes arguably constitutes "advertisement", as defined in the policy, infringing upon "another's" copyright, trade dress of slogan. Accordingly, we conclude the policy requires appellee to defend the insureds, unless coverage does not apply under the exclusionary language contained in Subsection 2 of the policy.
 {¶ 58} That subsection provides the insurance does not apply to "personal and advertising injury" arising out a "breach of contract, except an implied contract to use another's advertising idea." A review of the Edgell complaint indicates the case arises out of an alleged breach of contract between the parties, which was not an implied contract to use another's advertising idea. Accordingly, we conclude coverage is excluded under the policy.
 {¶ 59} Based upon the above, appellees are entitled to summary judgment in their favor, and the January 30, 2006 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Wise, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.