Johnson, Admr., Appellee, *v.* Grant Hospital, Appellant.

[Cite as Johnson v. Grant Hospital (1972),
32 Ohio St. 2d 169.]

(No. 72-288—Decided December 15, 1972.)

174

*Messrs. Barkan, Barkan & Neff* and *Mr. Frank J. Neff*, for appellee.

*Messrs. Ginger & Christensen, Mr. Richard J. Brentlinger* and *Mr. Bradley Hummel*, for appellant.

O'NEILL, C. J. For reversal of the judgment of the Court of Appeals appellant advances two propositions of law: (1) "In an action for wrongful death based upon a breach of a specific duty of care owed by the defendant to a person committing suicide, the act of suicide is an intervening cause of death unless the decedent was mentally incompetent at the time he killed himself"; (2) "Where a patient in a general hospital indicates an intention to commit suicide and attempts to jump from a hospital window, is then locked in a security room on the order of her attending physician, a psychiatrist, with the provision that the door be opened the following morning, expert opinion evidence is required to establish the standard of care the hospital must exercise in following or disregarding the physician's order."

It is obvious that, if it is determined that the defendant hospital is not liable as a matter of law for the voluntary act of the patient in committing suicide, there is no necessity to pass upon all the issues raised in appellant's propositions of law. Consequently, this opinion will focus upon the question of defendant's liability on the facts presented.

In an annotation, entitled "Liability of hospital or sanitarium for injury or death of patient as result of his escape or attempted escape," 70 A. L. R. 2d 347, 348, it is said that as a general rule " * * *the duty of a hospital

toward its patients is to exercise such reasonable care for their safety as their known mental and physical condition may require, and that in a proper case this duty may extend to affording reasonable protection against self-inflicted injury * * *.''

The Court of Appeals, in its opinion, noted that hospitals have a duty '' * * * in caring for a patient to take steps to prevent the patient from injuring himself under circumstances where the danger is apparent,'' citing *Jones* v *Hawkes Hospital of Mt. Carmel* (1964), 175 Ohio St. 503, and *Burks* v. *Christ Hospital* (1969), 19 Ohio St. 2d 128.

Paragraph two of the syllabus in *Jones* reads:

''Where an expectant mother is in a labor room of the obstetrical department of a hospital, is under sedation and is extremely restless, endeavoring repeatedly to climb over the raised guardrails of her bed, and the nurse or nurses assigned to the care of such patient by the hospital leave the room and are absent for a period of from two to five minutes on a matter unrelated to the care of the patient, and during such absence of the nurse or nurses the patient falls out of her bed and is injured, expert opinion evidence is not necessary to aid the trier of the facts to ascertain whether the conduct of the nurse or nurses constituted negligence.''

In *Burks,* the syllabus reads:

''1. Where a short, obese hospital patient, who is in severe pain, is placed in a hospital bed with rollers and without side rails and sedated to the point where she is foggy, drowsy and disoriented, and while under the effects of sedation she falls from her bed and is injured, it is a jury question as to whether the hospital was negligent in not applying raised side rails to the bed, and, if the jury finds that the hospital was negligent, it is then a question for the jury to determine whether that negligence was the proximate cause of the injury which the patient suffered.

''2. In such case, in considering the question of the negligence of the hospital, the jury must also determine whether the hospital exercised reasonable care in promulgating and enforcing rules to protect the patient against

the dangers incident to the patient's condition."

It is noteworthy that in both *Jones* and *Burks* the hospitals provided the type of care for which the patients were admitted, and that their liability stemmed from injuries connected with alleged negligence in that care. On the other hand, the record here shows that the defendant hospital was a general hospital which did not provide care for mental patients and that the death resulted from deceased's own voluntary act.

In the case of *Clements* v. *Swedish Hospital* (1958), 252 Minn. 1, 89 N. W. 2d 162, plaintiff was admitted to a general hospital for treatment of injuries sustained in an automobile accident. After her admission, plaintiff "exhibited depression and possible hallucinatory ideas." This was known to the hospital staff and to her attending physician; however, the physician did not order any special treatment because of that knowledge. On the day plaintiff was to be discharged from the hospital she jumped out of a window, and subsequently she brought an action against the hospital for the injuries thereby sustained. The trial court directed a verdict for the hospital and the Supreme Court of Minnesota affirmed.

After observing that the defendant hospital was a general hospital not equipped for the care of mental patients and that there was nothing to indicate that plaintiff was contemplating suicide, the court concluded, at page 7:

"* * * To hold that under such circumstances the failure of the hospital attendants to apply restraints or to take other steps to restrict or confine her upon their own responsibility constituted negligence would place too heavy and dangerous a burden upon the attendants employed by a general hospital. Hospitals for the treatment of mental patients are specially equipped and are staffed with employees trained in the field of mental disorders. If such a hospital were involved here, it might well be determined that the failure of its employees to restrain a patient confined for mental disorders or developing mental disturbances and manifesting suicidal tendencies after confine-

ment constituted negligence. See, *Mounds Park Hospital* v. *Von Eye* (8 Cir.), 245 F. (2d) 756. But where, as in the instant case, a patient is admitted to a general hospital merely for the treatment of injuries sustained in an accident and nothing is said as to any mental disorders afflicting such patients; and where, after an incident such as described here, the patient manifested such improvement as to eliminate any evidence of peculiarity or tendency to suicide and the hospital attendants abide by the orders of the patient's physician, it can scarcely be said that a fact question is present as to the hospital's negligence. See, *Mesedahl* v. *St. Luke's Hospital Assn.*, 194 Minn. 198, 259 N. W. 819.''

A general hospital, which ordinarily does not and is not equipped to treat mental patients, should not be held to the same standard of care as a hospital which is operated and equipped to provide care for a patient who has displayed a tendency to commit suicide.

With this principle in mind, the court turns to the question of whether, in the circumstances presented, the defendant hospital exercised reasonable care to protect the deceased against self-inflicted injury.

The record shows that defendant's staff had ''briefed'' the attending physician ''on the patient'' and that the physician ordered that the patient's door be locked at night. There was no order that the door be locked during the day, or that the patient be otherwise restrained. In fact, the physician testified that the deceased was ''not mentally ill, deranged or insane at the time she took her life,'' and that in a telephone conversation with the patient after he had ordered her locked in for the night ''her anger became subdued and we spoke rationally.'' The physician testified further that: ''In hospital practices or medical practice the nurses only act on specific orders given by the attending physician.''

The foregoing indicates that the staff of defendant hospital followed the instructions of deceased's attending physician to the letter. Inasmuch as defendant hospital is a general hospital, this court is of the opinion that it was

required to do no more to protect deceased from self-inflicted injury than was ordered by deceased's physician. Thus, by caring for deceased in the manner directed by her attending physician, defendant's staff exercised reasonable care in the circumstances. To require more would be to impose a standard of care which, as this court has determined, would extend beyond that required of a general hospital.

A hospital owes a duty to its patients to exercise such reasonable care for their safety as their known mental and physical condition may require; however, a general hospital is not liable for the death of a patient who voluntarily jumps from a hospital window, where the hospital staff provides the protective measures directed by the attending physician to prevent such act of self-destruction.

From the principles expressed herein, it follows that the trial court properly granted defendant's motion for a directed verdict.

Therefore, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

SCHNEIDER, CORRIGAN, STERN and LEACH, JJ., concur.
HERBERT, J., concurs in the judgment.
BROWN, J., dissents.

HERBERT, J., concurring in judgment. Under the facts of this case, a finding against the hospital would amount to a requirement that its employees have disobeyed the direct orders of decedent's attending physician. The instant record may come close, but does not reach a fact pattern justifying such unorthodox conduct by the hospital's personnel.

However, my quarrel with the syllabus and opinion in this case is that it removes from general hospitals all responsibility, save the obedience of orders from an attending physician. I can readily foresee special cases in which hospital personnel should exert an independent judgment, in the patient's interest, and should be required to do so as a part of their duty to exercise reasonable care for his safety.