GRAY, Appellant,

v.

JEFFERSON GERIATRIC AND REHABILITATION CENTER, Appellee.

[Cite as *Gray v. Jefferson Geriatric & Rehab. Ctr.* (1991), 76 Ohio App.3d 499.]

Court of Appeals of Ohio,
Ashtabula County.

No. 90–A–1566.

Decided Dec. 9, 1991.

*William J. Novak* and *Terry A. Bryer,* for appellant.

*William E. Riedel,* for appellee.

FORD, Presiding Judge.

This case emanates from the trial court's grant of summary judgment in favor of appellee, Jefferson Geriatric & Rehabilitation Center, and against appellant, Virginia Gray. Appellant was a resident at appellee's home from July 1985 until August 24, 1987, at which time she fell and fractured her right hip. Appellant was transferred to Richmond Heights General Hospital for treatment of the hip, where she was primarily under the care of L. Leif, D.O.

On September 10, 1987, appellant returned to appellee's facility. Leif's instructions stated that appellant was capable of full weight bearing and that she should undergo strengthening exercises and ambulatory training. Leif's instructions were silent as to the use of restraints. When appellant returned to the home, she was examined by Dr. H. Waid, who ordered an intermediate level of care and exercise activities. Waid also ordered that side rails be used on appellant while she was in the bed.

On September 19, 1987, appellant was assisted from her bed and placed in a regular chair. At approximately 11:00 a.m., appellant fell from the chair and was injured. Appellee's medical chart regarding appellant indicated that on the morning of the fall, an L.P.N., Denise Holmes, observed appellant at 8:30, 10:00, and 10:55 a.m. However, both the 10:00 and the 10:55 a.m. entries were designated as late entries. Further, the entries were written on the chart after the notation regarding the fall had been entered. The 10:55 a.m. entry stated that appellant was "sitting upright in bedside chair looking out window, when made rounds. Staff continues to check on resident frequently to assure safety and patient's needs."

On July 29, 1988, appellant filed a suit against appellee for negligence based on appellee's failure to exercise due care for appellant's safety. On January 8, 1990, appellee filed a motion for summary judgment, in response to which appellant filed a brief in opposition. The trial court granted the motion in favor of appellee, and appellant appeals, raising the following assignment of error.

"The trial court erred in granting defendant's motion for summary judgment."

In the sole assignment, appellant contends that a nursing home has a duty to exercise reasonable care for the safety of its patients; the reasonableness of such care, appellant argues, is an issue of fact which must be determined by the trier of fact.

Under Civ.R. 56, the party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact" that demonstrate the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Once a motion for summary judgment is made, it forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

Appellant alleged in her complaint that while a patient at appellee's nursing home, appellant suffered a fall from a chair as a result of appellee's and its employees' negligence. In opposition to appellee's motion for summary judgment, appellant submitted the affidavit of a registered nurse, Joy Black. The registered nurse, in her affidavit, attested to her qualifications and her familiarity with the standard of nursing care in the handling of geriatric patients. She also stated that she had reviewed the Richmond Heights General Hospital records and appellee's records regarding appellant, which indicated that appellant was "frequently confused and diagnosed as having advanced dementia—probable Alzheimer." Nurse Black expressed her opinion that "in her experience, patients who suffer from confusion and who have problems with their short-term memory will forget that they need assistance to ambulate and will attempt to move on their own without assistance." Black further opined that "because of the danger that a patient who needs assistance to ambulate will attempt to move unassisted, good nursing practice would require that precautions should be taken to prevent the patient from getting up unassisted." Further, the nurse indicated that based upon reasonable nursing practices, appellee's nurses "fell below the standard of care in their care and supervision of Virginia Gray."

In essence, the appellee maintains in support of the entry of summary judgment in their favor that (1) they were entitled to judgment in their favor as a matter of law because appellant failed to establish a prima facie case of negligence, (2) appellant's claim against appellee was barred by R.C. 3721.-13(A)(13), and (3) a registered nurse is incompetent to give an expert opinion on the use of physical restraints.

■ To prove the liability issues of a negligence claim, the plaintiff must establish (1) that appellee owed a duty to appellant, (2) that appellee failed to discharge that duty, and (3) that the breach of that duty was the proximate cause of the resulting injury. *Wise v. Doctors Hosp. North* (1982), 7 Ohio App.3d 331, 7 OBR 427, 455 N.E.2d 1032; *Moncol v. Bd. of Edn.* (1978), 55 Ohio St.2d 72, 9 O.O.3d 75, 378 N.E.2d 155.

A perusal of the trial court's judgment indicates that the trial court determined that the duty imposed on appellee is that "a nursing home is required to exercise reasonable care for the safety of its patients, as their known mental and physical conditions may require. *Johnson v. Grant Hospital*, [ (1972) ], 32 Ohio St.2d 169 [61 O.O.2d 413], 291 N.E.2d 440."

Therefore, the trial court found that appellee did, in fact, have a duty recognized by law. Accordingly, the remaining question was whether appellee had breached that duty. It appears that in answering that particular question, the trial court determined that R.C. 3721.13(A)(13) was applicable,

and that the statute prohibited the use of nonintrusive methods of securing appellant safely in a chair. Also, it seems that the trial court concluded that appellant was actually checked immediately before the fall, in spite of the fact that the record indicated that appellee's nurse made the last two entries (10:00 and 10:55 a.m.) after appellant's fall, which occurred at 11:00 a.m. This underlying submission was not contradicted and therefore the trial court accepted it as true for purposes of summary judgment.

With regard to R.C. 3721.13(A)(13), the statute provides that residents of a home have:

"The right to be free from physical or chemical restraints or prolonged isolation except to the minimum extent necessary to protect the resident from injury to himself, others, or to property and except as authorized in writing by the attending physician for a specified and limited period of time and documented in the resident's medical record. * * *

"Physical or chemical restraints or isolation may be used in an emergency situation without authorization of the attending physician only to protect the resident from injury to himself or others. * * * *"

Moreover, R.C. 3721.10(F) defines "physical restraint" as follows:

"(F) 'Physical restraint' means, but is not limited to, any article, device, or garment that interferes with the free movement of the resident and that he is unable to remove easily, a geriatric chair, or a locked room door."

Appellant's expert, Joy Black, opined that nonintrusive methods could have been used in order to prevent appellant from getting up unassisted, *e.g.*, a tray in front of the chair.

The trial court never specifically stated that such nonintrusive methods violated R.C. 3721.10(F) regarding what constitutes physical constraints. However, based on the judgment, it seems as though the trial court determined that matter in the affirmative.

■ According to the evidential submissions, appellant appears to have raised a material question of fact as to whether there are nonintrusive methods which may be used on a patient, and which are not within the definition of "physical restraints" per R.C. 3721.10(F), *e.g.*, placing a tray in front of a patient in a chair.

Further, an examination of R.C. 3721.13(A)(13) discloses that absent physician authorization of restraints, as is the case here, restraints may be used only in emergency situations in order to protect the patient from injury to himself or others.

The statute does not define "emergency situation." However, the trial court apparently determined that no emergency situation existed, based on the

fact that appellee's medical charts stated that appellee's nurse (Holmes) had checked on appellant five minutes before the fall and appellant was sitting upright in a chair looking out the window.

As argued by appellant, the 10:55 a.m. entry, relied on by the court, was entered on the chart after the fall had occurred.

Essentially, appellant argues that when appellee's evidence is viewed in a light most favorable to appellant, reasonable minds can disagree as to whether appellee's nurse checked on appellant between 8:30 a.m. and the time of the fall, which occurred at 11:00 a.m., and, further, as to the reasonableness of the time intervals between observations of a patient in appellant's condition. See *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597; see, also, *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314.

Although this matter regarding the late entries raises a question of Denise Holmes' credibility, it does not give rise to a question of material fact in the given context of summary judgment. While we take no exception to case law which states that "[r]esolution of a motion for summary judgment does not include trying the credibility of witnesses," *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 27 OBR 196, 499 N.E.2d 1291, we do not, however, believe that it is a part of this court's focus in the instant appeal, but it may properly be presented to and addressed by the trier of fact at trial.

With regard to appellee's claim that a registered nurse is not qualified to give expert testimony on the issue to testify, we disagree.

Expert testimony is not essential to a claim in ordinary negligence, but is admissible in evidence if the witness is qualified as an expert "by knowledge, skill, experience, training or education" and if "scientific, technical, or other specialized knowledge" will aid the trier of fact in understanding the evidence or in determining a fact in issue. Evid.R. 702. The registered nurse here, by affidavit, attested to her qualifications and her familiarity with the standards of geriatric nursing care and expressed her opinion that the practice alleged to have caused appellant's fall and resulting injury was not in conformity with the accepted standards of nursing care. She was not incompetent under Evid.R. 601(D) to render expert opinion testimony on the liability issues of an ordinary negligence claim, and, under the standards set forth in Evid.R. 702, her testimony would be admissible at trial.

Although Evid.R. 601(D) precludes expert testimony by a registered nurse on the liability issues in an action against a physician or hospital for medical malpractice, the rule poses no impediment to expert testimony by a registered

nurse on the liability issues in an ordinary negligence claim against a hospital for the negligence of a nurse. *Morris v. Children's Hosp. Med. Ctr.* (1991), 73 Ohio App.3d 437, 443–444, 597 N.E.2d 1110, 1113–1115.

We, therefore, conclude that the evidentiary material submitted on the motion for summary judgment does not disclose an *absence* of genuine issues of material fact for trial because the expert nurse did raise an issue when she opined that nonintrusive methods of restraint could have been used to prevent appellant from getting up unassisted. Thus, summary judgment was improvidently granted for appellee on appellant's claim seeking recovery against appellee for the negligent conduct of the nursing staff.

For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY and JOSEPH E. MAHONEY, JJ., concur.