SABOL, Appellant,

v.

RICHMOND HEIGHTS GENERAL HOSPITAL et al., Appellees.

[Cite as *Sabol v. Richmond Hts. Gen. Hosp.* (1996), 111 Ohio App.3d 598.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69507.

Decided June 10, 1996.

*Nurenberg, Plevin, Heller & McCarthy, Maurice L. Heller* and *Joel Levin,* for appellant.

*Jacobson Maynard, Tuschman & Kalur, Anna Moore–Carulas, Elizabeth E. Baer* and *Tobias J. Hirshman; Thomas L. Esper,* for appellees.

PATTON, Judge.

Defendant-appellee Richmond Heights General Hospital ("hospital") admitted twenty-four-year-old plaintiff-appellant Ronald Sabol for treatment following his attempt to commit suicide by drug overdose. Attending physicians placed plaintiff in the intensive care unit while preparations were made to transfer him to a specialized treatment facility. The physicians stabilized plaintiff's condition with medication, although he remained paranoid and delusional. Plaintiff attempted to leave the intensive care unit, but nurses intercepted him and returned him to bed. The nurses independently discussed using restraints, but decided against doing so because they believed that restraints would further agitate plaintiff. A nurse remained bedside with plaintiff in an attempt to calm him. Nearly five hours later, plaintiff climbed out of his bed, knocked over the attending nurse and ran into the hallway. Attending nurse and a second nurse tried to subdue plaintiff, but he eluded them, knocked out a third story window and jumped, suffering a slight fracture of his left forearm and other minor injuries.

Plaintiff filed this malpractice suit against the hospital, the attending physician, and two physicians employed by the hospital, claiming that they collectively failed to take steps necessary to secure his safety while he was committed to the intensive care unit. He claimed that defendants breached their duty of care by failing to place him in restraints despite his continued delusional behavior, praying for $1,000,000 in compensatory and $3,000,000 in punitive damages. A report submitted by plaintiff's expert noted that his compensatory damages included a feeling of restraint brought about by his jump and the concern that he could not reveal his problem to others because they might think that he is a disturbed person.

Defendants filed a motion for summary judgment, claiming that they had no duty to take further precautionary measures on authority of *Johnson v. Grant Hosp.* (1972), 32 Ohio St.2d 169, 61 O.O.2d 413, 291 N.E.2d 440. The trial court agreed and entered summary judgment for defendants.

I

In his first assignment of error, plaintiff complains that the trial court erred by granting summary judgment in favor of the hospital because the court failed to determine the applicable standard of care for a general hospital. He maintains that there may be situations when a general hospital would violate a duty to protect a patient from himself and, in any event, minimum training requirements have progressed to the point over the years so as to place a greater duty on nurses.

Pursuant to Civ.R. 56, summary judgment shall not be granted unless reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, keeping in mind that that party is entitled to have the evidence construed most strongly in its favor.

■■■ The law of medical negligence imposes on physicians engaged in the practice of medicine a duty to employ that degree of skill, care and diligence that a physician or surgeon of the same medical specialty would employ in like circumstances. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 579, 613 N.E.2d 1014, 1020–1021; *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus. Likewise, nurses are persons of knowledge and skill and must employ that degree of care and skill that a nurse of ordinary care, skill and diligence would employ in similar circumstances. *Berdyck, supra*, at paragraph three of the syllabus.

The parties do not dispute the facts—they dispute the relevant standard of care and the application of that standard of care to the undisputed facts.

■■ In *Johnson*, the syllabus states:

"A hospital owes a duty to its patients to exercise such reasonable care for their safety as their known mental and physical condition may require; however, a general hospital is not liable for the death of a patient who voluntarily jumps from a hospital window, where the hospital staff provides the protective measures directed by the attending physician to prevent such act of self-destruction."

The facts in *Johnson* are remarkably similar to those presented in this appeal. Grant Hospital, a general care facility, admitted Johnson's decedent for treatment of physical problems. During the course of her treatment, Johnson's decedent began displaying evidence of schizophrenia. Decedent became increasingly depressed and made two failed attempts to leap from ninth floor windows. Her treating physician ordered her locked in her room from midnight until the following morning. The physician did not order additional measures because decedent appeared rational. The following morning, nurses unlocked decedent's

door, giving her freedom of movement to walk in the corridors. At that time she left her room and jumped to her death from the ninth floor solarium.

Johnson brought suit against the hospital, alleging that the hospital's staff failed to exercise independent judgment necessary to protect his decedent. The Supreme Court affirmed a verdict directed in the Grant Hospital's favor.

The court first noted that Grant Hospital was a general care facility not equipped for the care of mental patients and "should not be held to the same standard of care as a hospital which is operated and equipped to provide care for a patient who has displayed a tendency to commit suicide." *Id.*, 32 Ohio St.2d at 178, 61 O.O.2d at 418, 291 N.E.2d at 445. The court, further noting that the nurses followed the treating physician's instructions "to the letter," stated:

"Inasmuch as defendant hospital is a general hospital, this court is of the opinion that it was required to do no more to protect deceased from self-inflicted injury than was ordered by deceased's physician. Thus, by caring for deceased in the manner directed by her attending physician, defendant's staff exercised reasonable care in the circumstances. To require more would be to impose a standard of care which, as this court has determined, would extend beyond that required of a general hospital." *Id.* at 178–179, 61 O.O.2d at 418–419, 291 N.E.2d at 445–446.

It is uncontested that Richmond Heights General Hospital is a general care facility. The evidence shows that the hospital accepted plaintiff for medical treatment relating to his initial suicide attempt, but realizing its limitations, recommended plaintiff's immediate institutionalization in a facility dedicated to psychiatric evaluation and treatment. Under *Johnson*, we find that the hospital had no further duty to plaintiff.

Plaintiff argues, however, that this case is distinguishable from *Johnson*. First, plaintiff maintains that *Johnson* should not apply because the treating physicians did not give any orders for the nurses to follow. Thus, he contends that *Johnson*'s reliance on the nurses' obedience to the doctor's orders is not applicable in this case, and we should examine the issue of liability under a standard of care applicable to nurses.

■ We reject this argument because we believe that it obfuscates *Johnson*'s thrust. Crucial to *Johnson* is the idea that a general hospital caring for a suicidal patient cannot be held to the same standard of care as a specialized hospital which routinely deals with such patients. Thus, while the attending nurses may have recognized plaintiff's suicidal tendencies, the courts recognize that their general knowledge (in comparison to nurses who specialize in psychiatric care) necessarily limits the scope of care expected of them under the circumstances.

Plaintiff's expert gave his opinion that the failure to use restraints "constitutes a gross failure to meet the standard of care required of a medical staff in this situation." But this opinion fails to distinguish the "situation" referred to. Plaintiff's severely depressed and suicidal condition was one admittedly not dealt with on a regular basis by the hospital staff. It is precisely because of this situation that *Johnson* does not require a higher degree of care for a general hospital, and plaintiff's expert made no distinction on this basis.

Plaintiff's expert also criticized the hospital for not transferring plaintiff to a more suitable facility as soon as possible, but the uncontradicted evidence showed that a consultation with a psychologist led the attending physician to recommend precisely that action immediately upon plaintiff's admission to the hospital. Because plaintiff's first attempted suicide occurred on the weekend, his parents indicated that they would proceed to make arrangements the following Monday. It appears that plaintiff's lack of health insurance made immediate arrangements difficult.

The fact that plaintiff's treating physicians did not give specific orders to the nurses in no way shifts responsibility for treatment to the nurses in a manner beyond that which would ordinarily apply. While the nurses were aware of the danger to plaintiff, plaintiff failed to show that they reacted in a manner inconsistent with the applicable standard of care for nurses in a general hospital. Knowledge of plaintiff's suicidal condition would not require a nurse in a general hospital to exercise the same degree of care as a nurse in a specialized facility (unless of course, the evidence showed that the nurse in question possessed specialized training applicable to the situation).

■ In this vein, we reject plaintiff's contention that current licensing requirements for nurses place them under a higher standard than that imposed in *Johnson*. Plaintiff did not raise this argument to the trial court, so we have no obligation to consider it. *State ex rel. Specht v. Oregon City Bd. of Edn.* (1981), 66 Ohio St.2d 178, 20 O.O.3d 191, 420 N.E.2d 1004.

Even had the argument been raised, we would not find it persuasive because plaintiff gives no basis for imposing a higher standard today. Notwithstanding the current state nursing curriculum which requires a nurse to attend one hundred twenty hours of instruction in areas of human and cultural understanding, including psychology, sociology and mental health communication, see Ohio Adm.Code 4723-5-24, nothing in those requirements indicates that the duty of care for nurses should be increased. Plaintiff fails to link the specific aspects of the curriculum to the duty of care under the facts of this case. We have no evidence to suggest how many of the one hundred twenty hours must be devoted to psychology. Additionally, we have no evidence to show what topics a course of study in psychology may cover.

What this argument suggests is that nurses are currently better trained to handle situations like the one presented at the hospital. The deposition testimony shows that the nurses were in fact able to appreciate plaintiff's condition and considered the use of restraints. Using their discretion, they rejected restraints because they believed that restraints would further aggravate plaintiff's paranoia. A nurse remained bedside for several hours in an effort to calm plaintiff, and two others were able to respond immediately when plaintiff overpowered the first nurse. Plaintiff's expert did not challenge the nurses' response after plaintiff left his bed—he simply stated that had restraints been used, plaintiff could not have jumped out the window.

Accordingly, there are no facts under *Johnson, supra,* that show a material issue of fact relating to the hospital staff's discharge of its duty in this case. The first assignment of error is overruled.

## II

■ The second assignment of error complains that the trial court erred by granting summary judgment to defendant physicians Falvo and Spradlin because the amended motion for summary judgment did not include any justification for judgment in their favor. The hospital's original motion for summary judgment did not include Spradlin and Falvo, but it filed an amended motion for summary judgment including both doctors. The amended motion for summary judgment does not set forth a separate argument for these doctors.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the court held that a party moving for summary judgment may not discharge its burden under Civ.R. 56 simply by making a conclusory statement that the nonmoving party has no evidence to prove its case. The moving party still bears the initial burden of informing the court of the basis of the motion.

The motion for summary judgment did not independently address legal or factual issues relating to either Spradlin or Falvo. In reply to plaintiff's brief in opposition to the motion for summary judgment, the hospital cited the deposition testimony of plaintiff's expert, but that deposition had not been filed with the court, so it cannot be used to support the motion for summary judgment. See Civ.R. 5(D).

With the hospital's failure to meet its initial burden to demonstrate no issues of material fact existed, plaintiff had no obligation to respond in opposition, since the hospital's motion for summary judgment failed to set forth the initial quantum of proof sufficient to place the burden of production on plaintiff. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274. Accordingly, we sustain the second assignment of error.

The judgment is affirmed in part and reversed in part, and the cause is remanded.

*Judgment accordingly.*

PATRICIA ANN BLACKMON and KARPINSKI, JJ., concur.