JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by Acme Construction Co., Inc. ("Acme") from an order of Judge Stuart A. Friedman that granted Continental National Indemnity Company's, ("CNI's"), motion for summary judgment, finding that CNI had no duty to indemnify or defend Acme for counterclaims involving work it performed on the real property of Rosby Resource Recovery, Inc. ("Rosby"). We affirm.
 {¶ 2} Rosby owns property on Schaaf Road in Brooklyn Heights that it wanted to utilize for a demolition and construction debris landfill. In 1996, it entered into a contract with Acme for excavation and grading improvements to the property and for the installation of a storm sewer system to direct rain water into an existing 42" pipe that emptied into the Cuyahoga River. In 1997, the Northeast Ohio Regional Sewer District, ("NEORSD,") notified Rosby that the sewer pipe was discharging effluent into the river. Rosby investigated and found defects and a breach in Acme's sewer system, and ordered them remedied. Thereafter, Acme submitted a bill for over $17,000 for the repairs, which Rosby refused to pay along with the outstanding contract balance of over $19,000. In 1998, the Cuyahoga County Board of Health notified Rosby that its storm sewer system was again discharging effluent into the river. A second inspection of the system revealed, according to Rosby, that virtually the entire length was found to be defective, with numerous leaks, and it required major repair.
 {¶ 3} While the parties were arguing about the extent of the necessary repairs and what Rosby termed as Acme's nonresponsiveness, Acme sued Rosby for over $37,000 representing the contract balance and the cost of the earlier repairs.[1] Rosby answered and counterclaimed alleging: express and implied breach of contract; breach of the covenant of good faith and fair dealing; negligent and intentional misrepresentation; negligence; breach of express and implied warranties; a cause of action under R.C. 1302.01, Ohio's "Commercial Code;" promissory estoppel; and, unjust enrichment. In addition, Rosby claimed that Acme had improperly filed a mechanic's lien against its real property and had "slandered" its title. It prayed for compensatory damages in excess of $158,000, with the exception of the slander of title claim, for which it sought unspecified compensatory damages in an amount exceeding $25,000 and punitive damages.
 {¶ 4} Acme tendered the defense and indemnification of Rosby's counterclaims to CNI, its general commercial liability insurer and, by letter dated December 10, 1998, was advised that because of exclusions in CNI's policy involving the work performed and product sold by Acme in undertaking the sewer improvements for a fee, it was denying both the defense of and indemnification for any of Rosby's counterclaims.
 {¶ 5} Acme then filed this declaratory judgment action to require CNI to perform under its contract of insurance. The Acme/Rosby case proceeded to trial and was settled when Acme agreed to pay Rosby $145,000. Acme then amended its complaint for declaratory judgment to pray for an order requiring CNI to pay the Rosby settlement and over $122,000 in attorney's fees and litigation costs it had incurred, in addition to over $26,000 in fees and expenses related to the declaratory judgment action to date.
 {¶ 6} Both parties moved for summary judgment; Acme's was denied and CNI's granted in a detailed opinion and order. The judge held that Rosby's counterclaims, except for the one involving the slander of title, all clearly revolved around claims alleging Acme's poor workmanship in constructing the sewer system and were excluded from coverage by the CNI policy's "work performed" clause. He also ruled that the slander of title claim did not fit into any coverage category. There was, therefore, no duty under the policy that CNI provide Acme with a defense or indemnification on Rosby's counterclaims.
 {¶ 7} Acme asserts thirteen assignments of error in this appeal, all of which are sub-arguments to whether the grant of summary judgment in favor of CNI was appropriate.[2]
 {¶ 8} Summary judgment shall be entered in favor of a moving party if no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law.[3]
 {¶ 9} "The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support his or her claim. Then, and only then, is the initial burden discharged, requiring the nonmoving party to comply with Civ.R. 56(E)."[4]
 {¶ 10} As announced by the United States Supreme Court in Andersonv. Liberty Lobby, Inc.,[5] summary judgment may be granted "[i]f the evidence [put forward by a non-movant] is merely colorable, * * * or is not significantly probative * * *. [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment * * *."[6]
 {¶ 11} CNI's policy provided Acme with insurance coverage, and an explicitly assumed duty to indemnify and defend it in any resulting lawsuit,[7] for covered losses occasioned by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." CNI disputes that any liability arises, in the first instance, because the claimed negligence or defective workmanship of Acme did not constitute an occurrence. Ohio case law, however, overwhelmingly indicates that allegations that a contractor failed to fulfill its duties in constructing or designing that which it had constructed, constitute an "occurrence" as CNI's policy, and most general commercial liability insurance policies, uniformly define that term, i.e. as an "accident."[8]
 {¶ 12} In support of its contention that Rosby's work-related counterclaims do not constitute "occurrences," CNI cites to a body of case law from other states and federal courts but, more importantly, to three Ohio appellate opinions. In Akers v. Beacon Ins. Co. Of America,[9]
the Third Appellate District held that allegations of poor workmanship by a contractor constituted intentional conduct and, as such, was not an "occurrence" as defined in a commercial general liability policy, and the First Appellate District agreed with this statement in American PhotocopyEquipment Co. v. Aetna Fire Underwriters Ins. Co.[10]
 {¶ 13} These cases, however, ignore the fact that the reason commercial general liability insurance policies do not provide coverage for claims against a contractor stemming from allegedly poor workmanship is because the policies contain exclusions for such coverage, not because the underlying conduct of a contractor does not constitute an "occurrence."[11] In Rodeen v. Royaltowne Wood Works, Inc.,[12] while holding that a contractor's refusal to complete a home construction project because of a dispute over the price of completion did not constitute an "occurrence" under the contractor's general liability policy, we held, "[a]ssuming arguendo that Royaltowne's provision of defective labor and materials qualifies as an `occurrence,' there is still no coverage for those damages because of the work performed and product exclusions."[13] As such, Rodeen is at best ambiguous as to whether a claim of defective workmanship constitutes an occurrence in a general commercial liability insurance policy, and is not helpful.
 {¶ 14} In light of the Ohio Supreme Court's explicit holding inZanco that allegations of negligence or defective workmanship constitute "occurrences," for purposes of determining an insurer's obligations under a contractor's general liability policy, and the line of Ohio case law re-affirming that holding repeatedly, as in Erie Ins. Exchange, supra, we find Akers, American Photocopy and Rodeen to be incorrect statements of the law and devoid of any precedential value on the issue. As such, finding an "occurrence" alleged in Rosby's counterclaims, we must proceed to determine if policy coverage exists triggering CNI's duties to defend and/or indemnify Acme.
 {¶ 15} "The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured."[14]
 {¶ 16} In Willoughby Hills v. Cincinnati Ins. Co.,[15] at the syllabus, the Ohio Supreme Court held:
 {¶ 17} "Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."
 {¶ 18} Therefore, contrary to Acme's assertion that before CNI could validly deny it coverage, it should have undertaken a factual investigation of Rosby's counterclaims by collecting and examining evidence relevant to the case, the correct rule is that an insurer must examine the claims alleged against its insured to determine whether the duty to defend or indemnify may arguably exist. As the Tenth District Court of Appeals stated:
 {¶ 19} "Thus, where a complaint states a claim that is partially or arguably within policy coverage, the insurer has an absolute duty to assume the defense of the entire action. * * * Only if there is no possibility of coverage under the policy based on the allegations in thecomplaint will the insurer not have a duty to defend the action. * * * Moreover, once a duty to defend is recognized, speculation about the insurer's ultimate obligation to indemnify is premature until facts excluding coverage are revealed during the defense of the litigation and the insurer timely reserves its rights to deny such coverage. * * * Thus, the relevant inquiry here is limited to whether the [plaintiff's] allegations in its complaint against [the insured] state a claim that is potentially or arguably within the policy coverage, thereby requiring [the insurer to defend] in the underlying action."[16]
 {¶ 20} The CNI policy defines "property damage," in relevant part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property,"[17] and the policy covers "property damage * * * to which this insurance applies."[18] The policy specifically excludes coverage for "`Property damage' to `your work' arising out of it or any part of it and included in the `products completed operations hazard.'"[19] "Your work" is defined in the policy as:
 {¶ 21} "a. Work or operations performed by you or on your behalf; and,
 {¶ 22} "b. Materials, parts or equipment furnished in connection with such work or operations.
 {¶ 23} "`Your work' includes:
 {¶ 24} "a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your work'; and
 {¶ 25} "b. The providing of or failure to provide warnings or instruction."[20]
 {¶ 26} The "products completed operations hazard" included in the "Your work" coverage exclusion excludes from coverage, in relevant part, "all `bodily injury' and `property damage' occurring away from premises you own or rent and arising out of `your product' or `your work' * * *."[21]
 {¶ 27} In Zanco Inc. v Michigan Mutual Ins. Co.,[22] a builder sued a condominium complex that, in turn, filed a counterclaim alleging that the construction of the condominium was not performed in a workmanlike manner. The builder's tender of the defense of the counterclaims was refused by its commercial general liability insurer because of a policy exclusion for: "* * * property damage to work performed by or on behalf of the insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith (the `work performed' exclusion) * * *."[23]
 {¶ 28} The insurance policy language in Zanco is substantially similar to that found in the CNI policy and operates to relieve the carrier of any duty to defend or indemnify on Rosby's counterclaims. All but one of the counterclaims, as in Zanco, allege various causes of action based upon the design, manufacture and installation of the defective "System" and, from the face of pleading, it becomes immediately apparent that the `work performed' exclusion has direct application to these facts.[24]
 {¶ 29} CNI's policy was never intended to insure the integrity or quality of Acme's product. "The allegations of the counterclaim claimed damages for faulty construction by [the builder], or at least that [the builder] used defective materials. Since those allegations do not fall within the coverage provided, no duty to defend existed."[25]
 {¶ 30} In Hahn's Elec. Co. v. Cochran,[26] the homeowner counterclaimed that the electrician's work was defective. The general commercial liability insurer had no duty to defend or indemnify based upon the "work performed" coverage exclusion contained in the policy, similar to the exclusions found in the Zanco case and the CNI policy.
 {¶ 31} "However, even if the allegations in * * * the counterclaim initially fall within the coverage provisions of the [general liability] policy, their claims are otherwise excluded from coverage by operation of various exclusions in the policy that exclude coverage for damages relating solely to a contractor's own work. Ohio courts have found that such standard exclusions in a business liability policy ensure that `damage resulting from a contractor's own work usually is excluded as liability insurance should not be a warranty or performance bond for general contractors.' * * * The exclusions generally operate to exclude coverage for damage to the work of the insured, but generally do not exclude coverage for collateral damage to other property. `This is to discourage careless work by making general contractors pay for any losses caused by their own work.' * * * Thus, a liability policy does not cover claims for the insured's defective or insufficient work or for the repair or replacement of that work."[27]
 {¶ 32} It is facially apparent that all of Rosby's performance-related counterclaims fall under the "work performed" exclusion contained in Acme's CNI policy because all relate to causes of action based on Acme's conduct in constructing the system or making various representations regarding its ability to do so. Acme, however, asserts that the counterclaims are prefaced by background allegations that Acme's sewer system caused the discharge of effluent into the Cuyahoga River, which may form a basis for the general damage award sought by Rosby and, therefore, do not relate to damages flowing from its sewer construction, but from damage to collateral property, such as, hypothetically, the river.
 {¶ 33} In support of its argument, Acme directs us to Erie Ins.Exchange, supra, in which a condominium owner's association sued the builder alleging that defective workmanship damaged the real property around the complex, in addition to damaging the complex itself. The Tenth Appellate District Court held that insurance coverage applied despite the "work performed" exception. The court held,
 {¶ 34} "The ["work performed"] exclusion, however, only operates to exclude coverage for damage to the work of the insured; it does not exclude coverage for collateral damage to other property.
 {¶ 35} "* * *
 {¶ 36} "Here, almost all of the damages alleged by the Association in its complaint against [the builder] are damages to the work performed by [it] — i.e., damages to the condominium units and common areas constructed and designed by [the builder]. However, some of the damages alleged in the underlying action do not appear from the complaint to be damages to the condominium units or common areas. In particular, the Association alleges damages to the surrounding landscape, including erosion and death to major trees. It is not clear from the pleadings that such damages are damages to the work performed by [the builder]."
 {¶ 37} While Acme argued below and on appeal, that Rosby's counterclaims could arguably be read to assert damages based on the discharge of effluent into the Cuyahoga River and, therefore, outside of the "work performed" exclusion of coverage found in CNI's policy, a review of the counterclaims refutes this position. The counterclaims, by way of background, allege that both the NEORSD and the Cuyahoga County Board of Health informed Rosby that its sewer was discharging waste into the Cuyahoga River. Each of these notifications, however, served no other purpose than to cause Rosby to inspect the sewer system and either require Acme to repair it or undertake repairs to it on its own. It is conclusively revealing that each of the counterclaims, excepting the "slander of title" claim, discussed infra, allege damages in excess of $158,000, and all directly refer to damages caused by Acme's failure to competently construct the system or its allegedly false representations that it could do so. The counterclaims allege that:
 {¶ 38} "60. Despite numerous efforts to repair the System, it has become evident that the entire System designed and installed by Acme is defective and must be replaced at a cost in excess of $158,000." (Emphasis added.)
 {¶ 39} Rosby's prayer is clearly not a random or speculative one, prompting a reader's uncertainty as to the possible source of the damages. Paragraph 60 of the counterclaims plainly spells out why it prayed for the dollar amount it did; because Acme's work was defective and, in order to cure the defects, over $158,000 must be expended.
 {¶ 40} "We will "`not stretch the allegations beyond reason to impose a duty on the insurer.'" * * * Nor will we impose a duty to defend based on allegations outside the complaint, where the allegations in the complaint are not vague or ambiguous and do not state a claim potentially or arguably within policy coverage. * * *"[28] We agree that all but the "slander of title" counterclaims fell under the "work performed" exception, were excluded from coverage under CNI's policy, and it had no duty to defend or indemnify Acme on those causes of action.
 {¶ 41} Acme contends that "slander of title" counterclaim activated CNI's duty to defend and indemnify it, at least until that claim was resolved. We disagree.
 {¶ 42} The CNI policy provides four types of coverage: bodily injury and property damage, detailed in Section (I)(A), discussed above, and personal and advertising injury, detailed in Section (I)(B). As quoted above, a claim for "slander of title" does not fall under any definition of "property damage" contained in the CNI policy.[29] Both "Advertising injury" and "Personal injury," in relevant part, are defined as "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."[30] According to the policy,
 {¶ 43} "b. This insurance applies to:
 {¶ 44} "1. "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
 {¶ 45} "2. "Advertising injury" caused by an offense committed in the course of advertising your goods, products and services."[31]
 {¶ 46} Ohio recognizes slander of title to real estate. It is a tort action against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss.[32] InHahn's Elec. Co., supra, the Tenth District succinctly discussed the applicability of "personal injury" coverage in a general liability policy, as defined above, in the context of a "slander of title" claim against a contractor.
 {¶ 47} "Under the policy's definition, the slander must be of a `person,' `organization,' `good,' `product,' or `service.' * * * Title to real estate refers to the union of the elements of legal ownership of real property. See Black's Law Dictionary (4 Ed.Rev. 1999). Because title to real estate is not a person, organization, good, product, or service as those terms are commonly understood, slander of title of real estate does not fall within the personal injury coverage provided by the policy."[33]
 {¶ 48} We agree that a "slander of title" claim does not fall under any "personal injury" or "advertising injury" coverage available under CNI's general liability insurance policy and it had no duty to defend or indemnify Acme on that counterclaim
 {¶ 49} Acme's assertion of entitlement to attorney's fees or costs associated with this case or the underlying action between it and Rosby evaporates with our affirming finding that CNI validly denied Acme's tender of its defense and indemnity. The thirteen assignments of error have no merit.
 {¶ 50} Judgment affirmed.
 {¶ 51} "Exhibit A: the Recital of Acme's Assignments of Error.
 {¶ 52} "I. The Trial Court Erred by Denying Acme's Motion for Summary Judgment."
 {¶ 53} "II. The Trial Court Erred by Granting CNI's Motion for Summary Judgment."
 {¶ 54} "III. The Trial Court Erred in Holding That CNI Did Not Have a Duty to Defend Acme Against the Rosby Counterclaim in the Case ofAcme Construction Co., Inc. v. Rosby Resource Recovery, Inc., Court of Common Pleas, Cuyahoga County, Ohio, Case No. 353776.
 {¶ 55} "IV. The Trial Court Erred in Finding That the Whole of the Rosby Counterclaim Alleges Poor Workmanship with Regard to the Design and Installation of a Sewer System for Rosby."
 {¶ 56} "V. The Trial Court Erred in Finding That Rosby's Damages, as Alleged in the Counterclaim, Involve the Repair and Replacement of the Sewer System."
 {¶ 57} "VI. The Trial Court Erred in Finding That in the Rosby Counterclaim, the Discharge of Effluent Was Not Raised for the Purpose of Asserting Some Type of Collateral Damage; it Was Rather the Means by Which Rosby Discovered Problems with the Sewer System."
 {¶ 58} "VII. The Trial Court Erred in Finding That Rosby Did Not Assert Damage to its Property Caused by the Effluent — the Presence of the Leachate Was the Catalyst to Rosby's Investigation with Regard to the Sewer System and Discovery of the Alleged Poor Workmanship That Was the Source of the Counterclaim." (Emphasis in original.)
 {¶ 59} "VIII. The Trial Court Erred in Holding That the Mere Pleading of Unspecified Compensatory Damages Without More Information or Concrete Allegations in the Counterclaim Does Not Trigger the Collateral Damage Exception to the `Work Performed' Exclusion of CNI's Insurance Policy."
 {¶ 60} "IX. The Trial Court Erred by Holding That CNI Did Not Have the Duty to Defend Acme Against Rosby's Claim of Slander of Title."
 {¶ 61} "X. The Trial Court Erred by Holding That CNI Had No Duty to Investigate the Rosby Counterclaim."
 {¶ 62} "XI. The Trial Court Erred in Failing to Enter Judgment in Favor of Acme for the Amount it Paid in Full Settlement of the Counterclaim of Rosby Resource Recovery, Inc., in the Case of AcmeConstruction Co., Inc. v. Rosby Resource Recovery, Inc., Court of Common Pleas, Cuyahoga County, Ohio, Case No. 353776."
 {¶ 63} "XII. The Trial Court Erred in Failing to Enter Judgment in Favor of Acme for its Attorney's Fees and Litigation Costs and Expenses Incurred in Defending Against the Rosby Counterclaim in the Case of AcmeConstruction Co., Inc. v. Rosby Resource Recovery, Inc., Court of Common Pleas, Cuyahoga County, Ohio, Case No. 353776."
 {¶ 64} "XIII. The Trial Court Erred in Failing to Enter Judgment in Favor of Acme for its Attorney's Fees and Litigation Costs and Expenses Incurred in Prosecuting this Action for Enforcement of the Insurance Contract."
 {¶ 65} "Exhibit B: a recitation of the work-related counterclaims.
 {¶ 66} That Acme maliciously breached its contract to competently install the sewer system and then abandoned its obligations under the contract;
 {¶ 67} That Acme impliedly breached its contract with Rosby by failing to honor its representations that it could design and install the system as promised;
 {¶ 68} That Acme breached its implied "duty of good faith and fair dealing," by misrepresenting its level of expertise as a contractor capable of competently designing and constructing the system and in failing to do so;
 {¶ 69} That Acme negligently misrepresented its ability to competently design and construct the sewer system, and that Rosby justifiably relied on such misrepresentations, to its detriment;
 {¶ 70} That Acme intentionally misrepresented its ability to competently design and construct the sewer system, and that Rosby justifiably relied on such misrepresentations, to its detriment;
 {¶ 71} That Acme negligently failed to construct the sewer system in a workmanlike manner;
 {¶ 72} That Acme breached its express warranty that it would provide Rosby with a sewer system fit for its purpose and in accord with Rosby's expectations;
 {¶ 73} That Acme breached its implied warranty to Rosby that the completed sewer system would be fit for its intended purpose and also breached its implied warranty of merchantability;
 {¶ 74} That the sewer system Acme delivered to Rosby was defective, giving rise to liability under R.C. 1302.01, et seq. By virtue of Acme's status as a "merchant" under Ohio law;
 {¶ 75} That Acme had been unjustly enriched in the amount that Rosby had paid it to install the system, which had turned out to be virtually useless."
 {¶ 76} Each of these claims asserted entitlement to a general damage amount "in excess of $158,000.
FRANK D. CELEBREZZE JR., J., CONCURS.
MICHAEL J. CORRIGAN, P.J., CONCURS IN JUDGMENT ONLY.
[1] Cuyahoga County Common Pleas Court Case No. 353776.
[2] These are listed in the appendix at Exhibit A.
[3] Welco Industries v. Applied Companies (1993), 67 Ohio St.3d 344,346. See also, Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367.
[4] Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. See also, Sabol v.Richmond Heights Gen. Hosp. (1996), 111 Ohio App.3d 598, 604,676 N.E.2d 958, 962.
[5] (1986), 477 U.S. 242.
[6] Bowen v. Kil-Kare, Inc. (1992) 63 Ohio St.3d 84, 96, Wright, J., concurring in part and dissenting in part.
[7] Policy, Section I(A)(1), regarding loss from "bodily injury" or "property damage, and Policy, Section I(B)(1), regarding loss from "personal injury" or "advertising injury."
[8] See Zanco, Inc. v. Michigan Mutual Ins. Co. (1984),11 Ohio St.3d 114, Erie Ins. Exchange v. Colony Development Corp. (1999), 136 Ohio App.3d 406, Ohio Casualty Ins. Co. v. Joseph SylvesterConstr. Co (Sept. 30, 1991), Trumbull App. No. 90-T-4439.
[9] (Aug.31, 1987), Marion App. No. 9-86-16.
[10] (Dec. 7, 1988), Hamilton App. No. C-870865.
[11] Zanco, Inc. v. Michigan Mutual Ins. Co., supra, Erie Ins. Exchangev. Colony Development Corp., supra, Panzica Constr. Co. v. Ohio CasualtyIns. Co. (May 16, 1996), Cuyahoga App. No. 69444, Ohio Casualty Ins. Co.v. Joseph Sylvester Constr. Co (Sept. 30, 1991), Trumbull App. No. 90-T-4439.
[12] (Jan.9, 1992), Cuyahoga App. No. 59601.
[13] Id., citing Zanco v. Michigan Mutual Ins. Co., supra.
[14] Motorists Mutual v. Trainor (1973), 33 Ohio St.2d 41, paragraph two of the syllabus.
[15] (1984), 9 Ohio St.3d 177.
[16] Erie Ins. Exchange v. Colony Development Corp. (1999),136 Ohio App.3d 406, 413 (internal citations omitted, emphasis added).
[17] Policy, Section (V)(15)(a).
[18] Policy, Section (I)(A)(1)(a).
[19] Policy, Section (I)(A)(2)(l).
[20] Policy, Section (V)(19).
[21] Policy, Section (V)(14)(a).
[22] (1984), 11 Ohio St.3d 114.
[23] Id, at 11 Ohio St.3d 114, 116.
[24] See Exhibit B.
[25] Id.
[26] (Sept. 24, 2002), Franklin App. Nos. 01AP-1391, 01AP-1394.
[27] Id. (Internal citations omitted.)
[28] Hahn's Elec. Co., supra. (Internal citations omitted.)
[29] See footnote 15.
[30] Policy, Section (V)(1)(a), defining "advertising injury," and Section (V)(13)(d), defining "personal injury."
[31] Policy, Section(I)(B)(1).
[32] Hahn's Elec. Co., supra, citing Green v. Lemarr (2000),139 Ohio App.3d 414, 430, Consun Food Ind., Inc. v. Fowkes (1991),81 Ohio App.3d 63, 72.
[33] Hahn's Elec. Co., supra, citing Bank One, Milwaukee, N.A. v.Breakers Dev., Inc. (Wis.App. 1997), 208 Wis.2d 230, 559 N.W.2d 911,912; Truck Ins. Exchange v. Bennett (1997), 53 Cal.App.4th 75,61 Cal.Rptr.2d 497; Kickham Group, Inc. v. American Natl. Fire Ins. Co.
(N.D.Tex., Sept. 24, 1997), Civ.A. 3:96-CV-1823-D, appeal dismissed (C.A.5, 1999), 174 F.3d 198; Doyle v. Engelke (Wis., June 24, 1998),219 Wis.2d 277, 580 N.W.2d 245; U.S.F.G. v. Saddle Ridge, L.L.C.
(D.Kan., Sept. 27, 1999), Civ. No. 98-2565-KHV.